## SIBLEY v. PATRICK.

Opinion delivered October 14, 1929.

*John M. Parker & Son* and *Carmichael & Hendricks,* for appellant.

*A. S. Hays, J. B. Ward* and *F. W. Majors,* for appellee.

KIRBY, J. Appellant brought this suit to establish as a lost will a soldier's letter, alleged to be a holographic will, devising the entire estate to him as sole beneficiary, and from the finding that the soldier died intestate, and the decree dismissing his cause for want of equity, the appeal is prosecuted.

Appellant alleged that Alston K. Wilson, a soldier in the A. E. F., who died in France in 1918, had given him all his estate by a letter alleged to be a holographic will, written to him from the army camp at Chattanooga,

Tennessee, before going overseas. The letter reads as follows:

"I am sailing for France in a few days, and feel that I will never return, and I am leaving you my property. I have not seen my father for several years, as we had a misunderstanding, and I have been told that he went to Texas in the cattle business."

The petition alleged the loss or destruction of the will, and prayed that same be established and declared to be the last will and testament of Alston K. Wilson, etc.

The amendment to the complaint alleged that the will was either in existence at the time of the death of Alston K. Wilson or had been fraudulently destroyed in the lifetime of the testator; that he was the owner of certain real estate in the Dardanelle District of Yell County, describing it, and that Lalla Wilson Patrick and Park A. Patrick were wrongfully claiming said real estate by virtue of a forged deed filed for record July 29, 1913, and October 13, 1920, and that said parties had been in the unlawful possession of the said property; prayed an accounting for rents, and the cancellation of the deed.

The second amendment alleged that his mother, Mrs. Mattie Hughes, was an aunt of deceased, and entitled to inherit an undivided one-third interest in the land described in the complaint, if Alston K. Wilson died intestate; that since the filing of the amendment he had acquired his mother's interest by deed, and was now the owner thereof.

Appellee denied that Alston K. Wilson made a will devising his property to appellant; denied that the letter or purported will was in the handwriting of Alston K. Wilson, that it was in words or signature as alleged, and that same had been lost or destroyed; alleged that Wilson died intestate, and admitted that he died in France, leaving certain personal property, but denied that he possessed any real estate in the county of Yell, and alleged that appellant knew from the date of Alston K. Wilson's death that he had a war risk policy of $5,000, and had

made no effort to collect it, and made no claim to any part of it, notwithstanding he knew the other heirs of Wilson were making proof of their claims for such interest, and that he acquiesced therein.

There was a great deal of testimony introduced, the testimony on the part of appellant going chiefly to the form and contents of the letter alleged to be the will, while the experts in testifying confined their statements to the genuineness of the signature of the letter. None of the witnesses claimed to have been especially familiar with the handwriting of Wilson, nor did they relate any facts from which such knowledge of it could be inferred. The experts themselves did not testify that the whole instrument, the body of the letter and the signature thereto, were in the same handwriting, nor did any three disinterested witnesses testify to such fact. Appellant himself testified about the loss of the letter, charging one of the appellees with having wrongfully taken and concealed it, but in stating its contents said it read: "I am sailing for France, and don't think I will ever return, and I want you to have my property," and on cross-examination said: "I am sailing for France in a few days, and don't think I will return. I want you to have my property." He also introduced in evidence a second letter he claimed to have received from Alston K. Wilson in France, in which he said that he could not do the thing requested, and had not time, and that he had already given him his property before leaving here. Experts testified that the signature to this letter was genuine, and they and others that the entire letter was in the handwriting of the deceased.

There was testimony about the alleged forgery of a contract for conveyance of the lands by the soldier and his father and his aunt, Mrs. Patrick, for the sale of the lands, some of the experts and others testifying that the deed was a forgery, while the other testimony tended to show it was genuine; and there is no question, but that Mrs. Patrick had paid $2,700 upon a draft for the pur-

chase money of the lands, and that $50 had been paid upon the execution of the contract of sale by the parties. This was slightly less than the greatest amount some of the witnesses placed as the value of the property.

The statute, § 10495, part 5, provides:

"Fifth. Where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator or testatrix, such will may be established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of each testator or testatrix, notwithstanding there may be no attesting witnesses to such will; but no will without such subscribing witnesses shall be pleaded in bar of a will subscribed in due form as prescribed in this act."

For the establishment of lost wills, § 10545 provides:

"No will of any testator shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator; nor unless its provisions be clearly and distinctly proved by at least two witnesses, a correct copy or draft being deemed equivalent to one witness."

This last section, however, only relates to the establishment of a lost or destroyed will, and does not relieve against the necessity of proving that the entire body and signature of the unwitnessed instrument or letter offered as a holographic will is in the proper handwriting of the testator, by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of the testator. In other words, such an unwitnessed instrument, testamentary in character, can only be proved to be a will by compliance with the said statute relating to the proof of wills in the proper handwriting of the testator. *Murphy* v. *Murphy,* 144 Ark. 429, 222 S. W. 721; *Cartwright* v. *Cartwright,* 158 Ark. 279, 250 S. W. 11.

After a careful examination of the testimony we are not able to say that the finding of the chancellor that the instrument or letter offered as a will was not proved as the statute requires it should be done, and that the testator died intestate, is against the preponderance of the evidence. Appellant, in stating the words of the will or letter, stated it neither on his direct or cross-examination as he had alleged it to be, ''I am leaving you my property,'' but only, ''I want you to have my property.'' The other witnesses testified, those who claimed to have seen the letter, that in form and meaning it was about as alleged. The construction of the language as alleged to have been used in the letter, ''I am leaving you my property,'' and as stated by appellant and his witnesses, ''I want you to have my property,'' might be different, the one expression indicating certainly more clearly a testamentary intention than the other, which might be held to indicate that the writer was only expressing his desire in the matter and indicating what might thereafter be done, while the other indicates the matter is finished.

We do not regard it necessary, however, to hold whether this proof meets the requirements of the statute (§ 10545) relating to the establishment and proof of lost or destroyed wills, since we do not find that the chancellor erred in not holding the letter proved as a holographic will, and that the writer thereof died intestate.

No good purpose would be served by a more extended analysis of the testimony in this case, and, having upheld, as we do, the decree of the chancellor, it becomes unimportant. The decree is accordingly affirmed.