MURPHY *v.* MURPHY.

Opinion delivered June 14, 1920.

1. WILLS — HOLOGRAPHIC WILL — UNIMPEACHABLE EVIDENCE.—Under Kirby's Digest, § 8012, requiring "the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of the testator" upon the probate of a holographic will, an unimpeachable witness is one whom the jury find to have spoken truthfully, and whose conclusion they find to be correct, though there was other evidence tending to contradict them.

2. WILLS—PROBATE—CREDIBILITY OF WITNESSES QUESTION FOR JURY. In proceedings to probate a holographic will under Kirby's Digest, § 8012, the credibility of the witnesses was for the jury.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict will be upheld on appeal if there is any substantial evidence to support it.

4. APPEAL AND ERROR — CONCLUSIVENESS OF VERDICT.—Appellate courts will take notice of the unquestioned laws of nature, of mathematics, of mechanics and of physics; and, where by applying such laws to the facts it is demonstrated beyond controversy that the verdict is based upon what is untrue, the appellate court will declare as a matter of law that the testimony is not legally sufficient to warrant the verdict.

5. EVIDENCE—EXPERT WITNESSES AS TO HANDWRITING.—Expert witnesses may be introduced to prove the genuineness of a disputed handwriting.

Appeal from Garland Circuit Court; *Scott Wood*, Judge; affirmed.

### STATEMENT OF FACTS.

On June 15, 1918, P. J. Murphy, a resident of Hot Springs, Arkansas, died there, leaving surviving him his widow, Minnie Murphy, and some collateral heirs, but no lineal descendants. After his death a search was made for a will, but none could be found. In the latter part of January, 1919, Mrs. Minnie Murphy went to South Dakota on business. While she was there in February, 1919, Anna Feeney, her sister, had occasion to examine a trunk containing the books and papers of the deceased and found the following: "i wont my wife Mrs. Minnie Murphy to have all My real eal estate, Money and personal property which i own or interest in at My Death.                         P. J. Murphy."

Mrs. Minnie Murphy offered this writing for probate as the last holographic will of her deceased husband. It was first presented to the clerk of the probate court in vacation and five disinterested witnesses testified that they had examined the writing in question and that the body of the writing as well as the signature thereto was in the genuine handwriting of P. J. Murphy, deceased. The collateral heirs of P. J. Murphy, deceased, made

themselves parties to the proceeding and contested the will. The probate court admitted the instrument to probate and record as the holographic will of P. J. Murphy, deceased.

Appellants appealed to the circuit court where a trial was had before a jury. The jury returned a verdict in favor of appellee, and from the judgment rendered, appellants have duly prosecuted an appeal to this court.

*R. G. Davies, A. B. Belding* and *L. E. Sawyer,* for appellants.

The verdict can not be upheld because evidence was introduced tending to contradict the evidence introduced by the proponent, and thus the will was not established by the unimpeachable evidence of at least three disinterested witnsses to the handwriting and signature as required by law. Kirby's Digest, § 8012. The best evidence is wanting, but the next best was introduced. 1 Wigmore on Ev., §§ 99, 383. It is shown by all the physical facts—the letters, checks, etc., style, lettering, etc.—that the will was not the last will of the deceased. The finding of the jury is against and contrary to the physical facts and human understanding and against the clear preponderance of the testimony, the best obtainable. 50 N. J. 397. it is plain that it was not established and that it was a forgery and not genuine. The burden was on the proponents of the will and they have failed.

*A. J. Murphy,* for appellee.

The great weight of the evidence sustains the validity of the will. The witnesses for appellants are in hopeless conflict with each other. Only a question of fact is involved—a question for the jury—and this verdict is conclusive. All the physical facts show the will to be genuine and the last will of the deceased. 10 R. C. L., p. 1008, § 198; 133 A. S. R. 1069; 137 Ark. 10; 123 *Id.* 435. The verdict is sustained by the great weight of the evidence and the physical facts. Our witnesses are not perjurers, and our client is not a criminal. The jury decided

that the will was genuine, the judge approved the verdict, and it should not be disturbed.

HART, J. (after stating the facts). Subdivision five of section 8012 of Kirby's Digest provides that where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator, such will may be established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of such testator.

In the case at bar the proponent introduced seven disinterested witnesses who had been closely associated with P. J. Murphy, deceased, during the last five or six years of his life, and who by correspondence and by examination of his handwriting in their social and business intercourse with him, were perfectly familiar with his handwriting. They testified that the entire body of the will and the signature thereto were in the genuine handwriting of said P. J. Murphy. Five experienced bank officials, who qualified as experts in handwriting, also testified that they had made a careful comparison of the purported will with other writings of said P. J. Murphy, which were admitted to be genuine, and all of them stated that such a comparison showed the entire body of the purported will and the signature thereto to be in the genuine handwriting of said P. J. Murphy. These expert witnesses were examined and cross-examined in detail as to their reasons for the opinion that the entire body of the will and the signature thereto were in the genuine handwriting of P. J. Murpy. They had observed the peculiarities and characteristics of his admitted genuine writings and testified that it was their opinion, from a comparison of these writings with the purported will, that the entire body of the will and the signature thereto were in the genuine handwriting of said P. J. Murphy.

On the other hand, witnesses were introduced by the contestants who testified that they were perfectly familiar with the handwriting of P. J. Murphy, and it was their opinion that the purported will was a forgery. Expert witnesses were also introduced by the contestants, who,

after a comparison of the purported will with other admittedly genuine writings of said P. J. Murphy, testified that it was their opinion that the purported will was a forgery. They called attention to the spelling and also the characteristics of the genuine handwriting of said P. J. Murphy which caused them to believe that the purported will was a forgery.

The purported will and the admittedly genuine writings of said P. J. Murphy were also submitted to the jury for their inspection.

It is first contended by counsel for the contestants that the verdict cannot be upheld because evidence was introduced by them tending to contradict the evidence introduced by the proponent of the will, and that on this account the will was not established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of the testator as required by section 8012 of Kirby's Digest. In other words, they contend that the evidence of the proponent is not unimpeachable within the requirements of the statute where there was any evidence of a substantial character introduced which tended to contradict it, no matter whether such evidence was introduced by the proponent of the will, or by the contestants.

We cannot agree with this contention. In *Arendt v. Arendt,* 80 Ark. 204, the court held that by "unimpeachable witness" is meant one whom the jury find to have spoken truthfully, and whose conclusion they find to be correct. See also *Mason v. Bowen,* 122 Ark. 411.

In the case at bar seven disinterested witnesses testified that for five or six years prior to the death of said P. J. Murphy, by reason of social and business intercourse with him, they were perfectly familiar with his handwriting, and that the entire body of the purported will and the signature thereto were in his proper handwriting. They testified in detail as to their opportunities for knowing his handwriting, and it is plain that their opportunities for knowing his handwriting were such as to qualify them to testify with regard to the genuineness of the pur-

ported will. Their testimony was consistent in itself, and the witnesses were not impeached, either by contradictory statements made by themselves, or by the testimony of other witnesses introduced for that purpose in the manner provided by the statute.

It is true that the contestants introduced evidence tending to contradict their testimony. The contestants opposed the probate of the will on the ground that it was a fraud and a forgery. This presented an issue which must be determined under the rules of evidence governing all contests in courts. Under the issue presented, the doors of justice were opened for the introduction of all legal evidence relative to the question. So the contestants introduced evidence tending to show that the purported will was a forgery. This was done by witnesses who testified that they knew the handwriting of said P. J. Murphy. Expert witnesses were introduced by both sides. After all the credibility of the witnesses was a question for the jury. The jury has said by its verdict that it believed the witnesses for the proponent of the will. Therefore, the jury has found that the seven witnesses who testified that the entire body of the will as well as the signature thereto was in the proper handwriting of said P. J. Murphy and that their evidence is unimpeachable.

Again, it is contended by counsel for the contestants that the verdict of the jury is contrary to the physical facts. We cannot agree with counsel in this contention. Under the settled rules of this court we must uphold a verdict on appeal if there is any substantial evidence to support it. Of course where the facts are undisputed, and by applying to them the well known laws of nature and the physical facts, it is demonstrated beyond controversy that the verdict is based upon what is untrue, and cannot be true, this court will declare as a matter of law that the testimony is not legally sufficient to warrant the verdict. *St. L. & S. F. Ry. Co.* v. *Stewart,* 137 Ark. 6. The reason for the rule is stated in *St. Louis S. W. Ry. Co.* v. *Ellenwood,* 123 Ark. 428, and need not be repeated

here. The court has repeatedly held the law to be that if, after consideration of all the evidence, the trial court is of the opinion that the verdict of the jury was contrary to the weight of the evidence, it is the duty of that court to set aside the verdict. Upon appeal we must uphold the verdict if there is any substantial evidence to support it. As said in that case, appellate courts will take notice of the unquestioned laws of nature, of mathematics, of mechanics and of physics, and where, by applying such laws to the facts, it is demonstrated beyond controversy that the verdict is based upon what is untrue and what cannot be true, this court will declare as a matter of law that the testimony is not legally sufficient to warrant the verdict.

It is well settled that expert witnesses may be introduced to prove the genuineness of a disputed handwriting. 11 R. C. L., sec. 41, p. 620. The opinion of handwriting experts may be of great assistance to the jury. Their experience and studies have so qualified them, that from the comparison of the disputed writing with other writings admitted to be genuine, they can detect peculiarities in the writing which might escape the observation of those less experienced.

The record shows that the deceased was a man of but little education and that he was a poor speller. The purported will contains one word which was misspelled and which in the admittedly genuine writings of the deceased was never misspelled. The personal pronoun "I" is a small letter in the purported will, while in the admittedly genuine writings it is always a capital letter. Other peculiarities in the handwriting and spelling of the testator are pointed out. We need not go into details about these matters, however. While they are strong evidence that the document is not genuine, such evidence is not conclusive. It cannot be said that the testimony of the witnesses for the proponent of the will is contradicted by physical facts or is opposed to any unquestioned law of nature. The issue to be determined by the jury was the genuineness of the handwriting of P. J. Murphy. The tes-

timony of many witnesses who were familiar with his handwriting was heard by the jury and was in direct conflict. The testimony of the experts was also in conflict. The jury had before it the purported will and several admittedly genuine writings of P. J. Murphy as a standard of comparison. The question of the genuineness of the handwriting depended upon the truth or falsity of the testimony of the witnesses. Their testimony related to matters and conditions which might or might not be true. The testimony of none of the witnesses is contrary to any law of nature. It is beside the question that the evidence is conflicting. The jury passed upon the credibility of the witnesses, and the trial court did likewise in overruling the motion for a new trial. There was evidence of a substantial character to support the verdict, and to hold otherwise would be to substitute our judgment for that of the jury and of the trial court. This, under the settled rules of this court, we cannot do, and the judgment must be affirmed.