MISSOURI PACIFIC TRANSPORTATION CO. v. BELL.

4-5262                                                    122 S. W. 2d 958

Opinion delivered December 5, 1938.

House, Moses & Holmes, T. J. Gentry, Jr., and Eugene R. Warren, for appellant.

F. D. Goza and J. H. Lookadoo, for appellee.

McHANEY, J. Appellee, a passenger on one of the Missouri Pacific buses on October 20, 1937, from Little

Rock to Gifford, Arkansas, brought this action against appellants to recover damages for personal injuries she alleges she sustained when she fell in the bus while alighting therefrom. The negligence alleged in the complaint was that the driver stopped the bus for her to alight at her destination and that he "carelessly and negligently permitted said bus to start again and roll down the highway several feet without being under control by him, after having stopped said bus, and while plaintiff was walking down the aisle in said bus for the purpose of alighting. That after said bus had rolled down the highway for several feet and while plaintiff was walking in the aisle of said bus as aforesaid, the defendant, J. N. Wright, carelessly and negligently stopped the bus very suddenly by means of the brake," causing her to fall and receive severe and painful injuries. Appellants answered, denying generally and specifically all the material allegations of negligence and injuries alleged. Trial resulted in a verdict and judgment for appellee in the sum of $15,000. The case is here on appeal.

We think the court erred in refusing to direct a verdict for appellants at their request. The complaint alleged a cause of action, but the proof failed to sustain it, in that it failed to establish that, after the bus first came to a stop to permit the appellee, her husband and little girl to alight, it was started again and was stopped with a sudden, unnecessary and violent jerk causing her to fall and receive all the terrible injuries described in the evidence.

Her testimony on the question of negligence is, when asked how she received her injuries, she answered: "Well, when we got to the top of the intersection where we were supposed to get off, there is a hill there. My husband told him when we got there we wanted to get off, that when he got there he went about middleways and stopped the bus, opened the door and throwed on the lights and we proceeded to get up and get out. He and the girl were ahead of me on the bus and they got three or four steps ahead of me on the bus, and when I got up and started up the aisle, the bus jammed, I guess, the

brakes, and threw me across the bus and down between the seats." Again she was asked by her counsel:

"Q. Mrs. Bell, what really caused you to fall?
"A. The stopping of the bus.
"Q. The sudden stopping of the bus?
"A. The sudden stopping of the bus."

This was all the testimony she gave as to the negligence of the driver. Her husband, a witness in her behalf, testified as follows: "Q. She claims to have fallen by reason of a jerk or sudden stopping of the bus—what do you know about that? A. The bus made a second stop. Q. Tell just what happened? A. Well, when I pulled the cord and told the driver that we wanted off at the intersection, he pulled up and stopped about where he ordinarily stopped and let us off north of the intersection. I don't know why he never did pull down in front —I guess on account of the traffic—and the little girl was on the seat with me, and if the court will permit it, I could start back at Little Rock and tell something— Q. Go ahead and tell about getting off there? A. The little girl was in the seat with me and when he opened the door, I immediately got up and out of my seat and proceeded to the front of the bus, and just before I got to the front of the bus I noticed the bus was slowly moving again and just at that instant he applied the brake again and I caught to the baggage carrier and got off the bus, and when I got off I looked back and my wife wasn't in sight and I stepped on the step and she had come on, holding to the corner of the last seat." Another witness, who claims to have driven his car up to the intersection of a side road with highway 67 on which the bus was traveling, stated that the bus came to a stop, rolled a few feet and stopped again, but he did not testify as to any sudden, unnecessary or violent jerk of the bus in either stop. This was all the evidence on the subject for appellee. Seven other passengers on the bus and the driver, appellant Wright, testified that the bus came to a full stop in the ordinary way without any jerk, that the driver turned on the lights, opened the door and got on the outside to assist appellee, her husband and little girl to alight, and that the bus did not move and was not stopped

again while they were alighting. But assuming the testimony of these seven disinterested passengers, constituting as it undoubtedly does the great preponderance of the evidence, testified falsely, and that appellee and her husband, both vitally interested in the result of the action, testified truthfully, still it is insufficient to show that appellee was thrown by reason of a second stop which was unusual, unnecessary or a violent jerk. They do not contend that the motor was put in gear to start the bus a second time, but only that it was stopped on a slight decline of about ¾ inch in two feet and was permitted to roll down this decline about 4 or 5 feet when it was again stopped by the application of the brakes. Now, if the bus moved from a dead stop down such a slight decline for only 4 or 5 feet, it would seem to be a physical impossibility for the bus to have gained enough momentum or speed to have caused a sudden, unnecessary or violent jerk, sufficient to upset a normal person standing in the aisle and cause the terribly disabling injuries to appellee, about which she and her witnesses have testified.

When asked by her counsel as to what "really" caused her to fall, she answered: "The stopping of the bus;" and when prompted further by counsel, she said "The sudden stopping of the bus." She says nothing about the second stopping of the bus. It is undoubtedly true that appellee fell in the bus, and it may be true that she was injured in the fall, but the proof fails to show that it was the result of the second stopping of the bus, or that the second stopping, if any, was sudden, unnecessary or violent, and these were the grounds of negligence relied on in the complaint and without proof of which no recovery can be sustained.

At one place in her testimony appellee, in answer to a question as to the statement she made at the time she got off the bus that her foot slipped, testified: "I don't know. I said my feet slipped—it was like ice. I know my feet went out from under something. Q. You said your feet went out from under you and caused you to fall? A. I don't know what I said. Q. You said it was like ice. A. I said my feet went out from under me like I was standing on ice. Q. Didn't you state that your foot

slipped on something? A. I don't know whether I did or not.'' That was what she said right at the time of the accident. Whether her injuries were the result of her feet slipping out from under her or whether she fell when the bus stopped is not material to the inquiry here. Before there can be a recovery the negligence alleged must be established by proof, and as we have shown, it is not sufficient. Juries are not permitted to base their verdicts on speculation and conjecture, and as to whether there is any substantial evidence to support the verdict is a question of law and not of fact. *Murphy* v. *Murphy,* 144 Ark. 429, 222 S. W. 721; *Fair Store No. 32* v. *Hadley Milling Company,* 148 Ark. 209, 229 S. W. 727.

For the error of the court in refusing to direct a verdict for appellant, the judgment is reversed, and, as the cause appears to have been fully developed, it is dismissed.

HUMPHREYS, MEHAFFY and BAKER, JJ., dissent.

MEHAFFY, J. (dissenting). I cannot agree with the majority in reversing and dismissing this case. The majority opinion says:

''Whether her injuries were the result of her feet slipping out from under her, or whether she fell when the bus stopped, is not material to the injury here.''

It is, also, said in the opinion: ''But assuming the testimony of these seven distinterested passengers, constituting as it undoubtedly does the great preponderance of the evidence, testified falsely, and that appellee and her husband, both vitally interested in the result of the action, testified truthfully, still it is insufficient to show that appellee was thrown by reason of a second stop which was unusual, unnecessary, or a violent jerk.''

It is not a question of whether it was an unusual, violent jerk, nor is there any question here as to who told the truth. That question is settled by the jury's verdict. This court and practically all of the other appellate courts in the country, have held that carriers of passengers must exercise the highest degree of care for the protection of their passengers, and if guilty of slight negligence, which causes the injury of a passenger, the carrier is liable.

"A common carrier of passengers by street car is required to exercise the highest degree of skill and care which may reasonably be expected of intelligent and prudent persons employed in that business, in view of the instrumentalities employed and the dangers naturally to be apprehended.

When the cars of the street railway companies stop for passengers to alight, it is the duty of their servants to stop long enough for the passengers to alight, and to see that the car does not start again while any one is attempting to alight or exposed to danger. Stopping a reasonable time is not sufficient, but it is the duty of the conductor or those in charge to see and know that no passenger is in the act of alighting or in a dangerous position before putting the car in motion again." *Oliver* v. *Ft. Smith Light & Traction Co.*, 89 Ark. 222, 116 S. W. 204, 131 Am. St. Rep. 86.

It is admitted that appellee was a passenger, and the evidence showed that the bus stopped at its usual place for passengers to alight; that when appellee left her seat, started to the door of the bus for the purpose of getting off, the bus, without warning, started up again, causing her to fall, resulting in her injuries. It is wholly immaterial whether there was a sudden or violent jerk, because if appellants negligently permitted the bus to start after it had stopped, and while appellee was in the act of going to the door to alight, and this starting of the bus caused her to fall, resulting in her injuries, the carrier is liable. The authorities are practically unanimous in holding this to be the rule.

This court recently said, in commenting on the instruction given by the lower court: " 'Our interpretation of the instruction is that it told the jury that it was appellant's duty to exercise that degree of care which may reasonably be expected of intelligent people to see that its car was kept in repair and in a safe condition consistent with the practical operation thereof.' The court held that the instruction was more favorable than the appellant was entitled to; that the law imposes the highest degree of skill and care upon common carriers consistent with the practical operation of their cars to

furnish their passengers a safe place to get on and off.'' *Mo. Pac. Trans. Co.* v. *Robinson,* 191 Ark. 428, 86 S. W. 2d 913; *Ark. P. & L. Co.* v. *Hughes,* 189 Ark. 1015, 76 S. W. 2d 53; *Prescott & N. W. Rd. Co.* v. *Thomas,* 114 Ark. 56, 167 S. W. 486; *Beech* v. *Eureka Traction Co.,* 135 Ark. 542, 203 S. W. 834.

The rule is stated in C. J. as follows: ''In view of the limitation which will be stated hereafter, the rule is probably more accurately stated as the highest degree of care, prudence, and foresight that a prudent man engaged in the business, as usually conducted, would employ, that is, such care as is reasonably practicable; or in other words, such care, prudence, and foresight as can reasonably be exercised consistent with the practical operation of the road or mode of conveyance used, and the exercise of its business as a carrier, taking into consideration the circumstances and conditions existing at the time and place in question, and in some cases this degree of care has been expressed as the highest practicable care, caution, and diligence which capable and faithful railroad men would exercise under similar circumstances.'' 10 C. J. 858 *et seq.*

Whether the starting of the bus after it had stopped for passengers to alight, and then stopping it again while passengers were attempting to alight, was the exercise of the highest degree of care by the carrier was not a question of law, but was a question of fact under the circumstances, and was for the jury and not this court to decide.

The evidence shows that the appellee, when she started to get off, was caused to fall by the starting of the bus and stopping it a second time. Her husband testified that he caught to the baggage carrier and did not fall. Mr. Belote, a citizen of Malvern, testified that he drove up and knows that the bus stopped a second time. This testimony must be taken as true. It is the established rule of this court that in testing the sufficiency of evidence to sustain the verdict, the evidence of the appellee must be viewed in the light most favorable to him, and if there is any substantial evidence, the jury's verdict is permitted to stand, notwithstanding the evidence of appellant's witnesses to the contrary.

The "disinterested" passengers that the majority talk about testified that the bus did not make but one stop; but they testified that the woman fell; something caused her to fall, and the jury found that it was the movement of the bus after it had stopped for passengers to alight.

The rule is thoroughly established in this jurisdiction that the jury, and not this court, is the judge of the credibility of witnesses and the strength and weight of their testimony.

In the case of *Humphries, et al., v. Kendall,* 195 Ark. 45, 111 S. W. 2d 492, this court said: " 'It is earnestly insisted by appellants that the court should have directed a verdict in their favor. As we have many times held in determining this question, we must view the evidence in the light most favorable to appellee, and if there is any substantial evidence to support the verdict, it will be sustained.' " *Missouri State Life Ins. Co.* v. *Holt,* 186 Ark. 672, 55 S. W. 2d 788; *Mo. Pac. Rd. Co.* v. *Harville,* 185 Ark. 47, 46 S. W. 2d 17; *Baltimore & O. Rd. Co.* v. *McGill Bros. Rice Mill,* 185 Ark. 108, 46 S. W. 2d 651; *Altman-Rogers Co.* v. *Rogers,* 185 Ark. 561, 48 S. W. 2d 239; *Halbrook* v. *Williams,* 185 Ark. 885, 50 S. W. 2d 243; *Ark. P. & L. Co.* v. *Connelly,* 185 Ark. 693, 49 S. W. 2d 387; *Chicago, R. I. & P. Ry. Co.* v. *Matthews,* 185 Ark. 724, 49 S. W. 2d 392.

The judges of this court have no opportunity to see the witness, observe his demeanor on the stand or his manner of testifying, and, therefore, could not judge of the credibility of the witness or the weight to be given his testimony as well as the trial judge and jurors, and for that reason we have uniformly held that if there is any substantial evidence to support the verdict of the jury, this court cannot set it aside. Even if we are of opinion that the verdict is against the preponderance of the evidence, and believe that if we had been on the jury we would have reached a different conclusion, still if there is any substantial evidence to support the jury's verdict, it must be upheld.

" 'The fact that the appellate court would have reached a different conclusion had the judges thereof sat

on the jury, or that they are of the opinion that the verdict is against the preponderance of the evidence, will not warrant the setting aside of a verdict based on conflicting evidence.' 4 C. J. 850, 960.''

This court several times quoted with approval this doctrine as stated by the Wisconsin court as follows: ''We must also keep in significant view the rule that, the verdict of a jury cannot, properly, be disturbed on appeal, merely because of its appearing to be against the clear weight of the evidence, or because if we were to pass upon the matter as seen in the printed record, we might find differently than the jury did.

''If the verdict has any credible evidence to support it—any which the jury could in reason have believed, leaving all mere conflicting evidence, evidence short of matter of common knowledge, conceded or unquestionably established facts and physical situations—it is proof against attack on appeal, and that must be applied so strictly, on account of the superior advantages of the court and jury before weighing the evidence, that the judgment of the latter approved by the former is due to prevail, unless it appears so radically wrong as to have no reasonable probabilities in its favor after giving legitimate effect to the presumption in its favor and the make weights reasonably presumed to have been rightly afforded below which do not appear, and could not be made to appear, of record.'' *Barlow* v. *Foster,* 149 Wis. 613, 136 N. W. 822.

The Utah Supreme Court said: ''Where, however, the evidence introduced has a legal tendency to make out a proper case, in all its parts, then, although it may, in the opinion of the trial court, or the appellate court, be slightly inconclusive, and far from satisfactory, yet it should be submitted to the jury whose proper province it is to consider and determine its tendency and weight.'' *Cunningham* v. *Union Pac. Ry. Co.,* 4 Utah 206, 7 Pac. 795.

One reason why the jury's verdict is conclusive here, is that the trial court and members of the jury see the witnesses on the stand, hear them testify, have an opportunity to observe their demeanor on the witness stand,

and to determine from all these things not only the credibility of the witnesses, but the weight to be given to their testimony. The judges of this court have no such opportunity; we simply have the printed record, and it is our province to decide the questions of law, and the province of the jury to decide questions of fact.

But the majority opinion says that juries are not permitted to base their verdicts on speculation and conjecture. That is true, and this court should not base its opinion on speculation and conjecture. I think that when the evidence shows that the bus started up, after passengers had been invited to alight at the usual place for passengers to alight, and then stopped again, causing a passenger to fall and injuring her, that these are questions of fact for the jury to decide, and that there is no speculation or conjecture about it.

It is also said in the majority opinion that whether there is substantial evidence to sustain the verdict is a question of law and not of fact, and the majority has therefore held that when the carrier committed the acts above stated, it was in the exercise of the highest degree of care. I think that these questions were for the jury and not for this court, and I think the judgment should be affirmed.

Mr. Justice Humphreys and Mr. Justice Baker agree with me.