Johnson *v.* State.

4116                                    126 S. W. 2d  289

Opinion delivered March 13, 1939.

*Claude F. Cooper* and *T. J. Crowder,* for appellants.
*Jack Holt,* Attorney General, *Jno. P. Streepy,* Asst.
Atty. General, for appellee.

SMITH, J. Two informations were filed by the prosecuting attorney in Osceola District of Mississippi County, in each of which Henry Johnson, Dan Johnson, and Dollie B. Johnson were charged with the offense of night-riding.

One information charged that the defendants ". . . did unlawfully, wilfully, feloniously and maliciously write and publish a threatening message or token and post same at Battle's Ferry Landing to Dean's Island near Pecan Point, in said district, county and state, in which they threatened to do violence to certain cotton pickers employed to work on the farm of Trice Battle, among whom was ......................... Letson, whose further name is to this informant unknown, if the said cotton pickers did not stay out of the cotton fields of the said Trice Battle; that said message or token was written with the felonious and unlawful intent to intimidate and threaten the said cotton pickers on the farm of the said Trice Battle (that the defendants united, confederated and banded themselves together to do an unlawful act in the night-time); and by writing and posting the following notice, which is made a part of this information:

"Stay out of field if you don't want get in trouble.

"Cotton pickers demand $1 per hundred for picking this crop of cotton. Wages for picking this crop are 40c, 50c, 60c, 85c per hundred. Cotton is selling about 8c per pound plus the government subsidy, which makes it worth over 10c per pound. Cotton picking wages therefore must be in line with the selling price of cotton.

"We urge all cotton pickers—union or non-union, to sit down in their homes and wait until prices reach $1 per hundred before picking another boll. U. S. law forbids transportation of labor across state lines during a strike.

"Wage Committee,

"Southern Tenant Farmers Union,

"Affiliated C. I. O.

"Join the Southern Tenant Farmer's Union and raise your wages."

The charging part of the other information is exactly the same as the one copied above except that it names Rufus Branch, instead of Trice Battle, as the man whose cotton pickers were intimidated from working, and mentions Dick Robinson and Albert Fisher as the cotton pickers who were intimidated, instead of ................ Letson.

During the progress of the trial the court permitted the prosecuting attorney to amend each of the informations by inserting the words inclosed in the parentheses: "that the defendants united, confederated and banded themselves together to do an unlawful act in the nighttime." When permission was given to make this amendment, and when the amendment was made, the presiding judge stated: "The court offers to permit the defendant to have such additional time as he may desire to meet the amendment, if he is not now prepared to meet it." No one of the defendants requested the time which the court offered to give, and the trial proceeded upon the information as amended.

This action of the court was not assigned as error in the motion for a new trial, and it is not here insisted that this action was erroneous. It appears, therefore, that if there was any error in permitting this amendment, that error was waived. The amendment did not change the nature of the crime charged or the degree thereof, and was therefore permissible under § 24 of Initiated Act No. 3, which appears as § 3853 of Pope's Digest.

It is insisted, however, that the informations as amended do not charge a public offense. In the case of *Kosier* v. *State,* 163 Ark. 513, 260 S. W. 404, which, like the instant case, was a prosecution under what is commonly called the night-riding statute, it was held that "An indictment for night-riding, . . . , being substantially in the language of the statute, was sufficient." Here, the indictment, not only employs the language of the statute, but recites the facts which constituted a violation thereof, and it was, therefore, sufficient to charge that offense.

No objection was made to the fact that the trial was had upon both the informations, but error is assigned in

the refusal of the court to grant the defendants a severance upon the trial of these informations. Section 3140, C. & M. Digest, which granted the right to sever two defendants jointly indicted for a felony, was amended by § 29 of Initiated Act No. 3 of 1936, (Acts of 1937, page 1384) *supra,* to read as follows: "Section 3140. Severance in felony cases. When two or more defendants are jointly indicted for a capital offense, any defendant requiring it is entitled to a separate trial; when indicted for a felony less than capital, defendants may be tried jointly or separately, in the discretion of the trial court. When separate trials are ordered in any case, the defendants shall be tried in the order directed by the court." In the recent case of *Graham & Seaman* v. *State, ante* p. 50, 121 S. W. 2d 893, it was held that in the trial of persons charged with a felony not capital, the denial of their motion for a severance was, under the amendatory act (§ 3976, Pope's Digest) within the discretion of the trial court, and was reversible only when that discretion had been abused. We think there was no abuse of this discretion in the instant case in denying the right of severance, especially in view of the fact that the defendants were charged with having conspired and confederated together to violate the law, and it was, therefore, necessary and proper to show their joint participation in the acts constituting a violation of the law which the information charged.

A special demurrer was filed to each information, in which it was alleged that the night-riding statute, which the accused were charged with having violated, contravened the 1st amendment to the Federal Constitution, in that it abridged the freedom of speech and the right of the people peaceably to assemble, as well as § 6, of Article II, of the Constitution of this state upon the same subject, and also that the statute was in violation of the 14th amendment to the Federal Constitution guaranteeing all persons the equal protection of the laws.

We do not think the legislation is violative of these constitutional provisions. The law applies alike to all persons who violate its provisions, and we find nothing in

it intended or calculated to abridge the right of free speech or of peaceable assemblage.

The notices, made part of the information copied above, were printed in part and written in part. All was printed except the sentence "Stay out of field if you don't want get in trouble," which sentence was written on the printed notice. The court charged the jury—and in that view we concur—that the printed notices, read apart from the writing thereon, were innocuous, and that the posting of these printed notices, apart from the writing thereon, either in the day or during the night, did not constitute a violation of the law. In other words, the jury was told, in effect, that the defendants had the right to refuse to pick cotton for a price less than $1 per hundred, and had the right to demand any price for their labor which they saw proper to charge. They not only had the right to do so themselves, but had the right to urge others to join them in this demand for an increase of wages, and that they could do this by word of mouth, by peaceable assemblage, or by a public appeal through printed notices. But what they did not have the right to do was to intimidate and prevent others from working for the wage offered, if those others wished to do so.

Upon this issue the court charged the jury as follows: "You are further told, gentlemen, that it is not unlawful for any labor organization to strike. They have the right to strike if they desire, without violating the law, so even if a strike was called it was not a violation of the law. The charge that they are being tried here for is not for striking, but under the night-riding statute the state charges that they violated the night-riding statute by seeking to threaten or intimidate in violation of the laws of that statute by certain messages that the state contends were written and published."

The writing upon the notices, "Stay out of field if you don't want get in trouble," was not merely an appeal for support in the prosecution of the strike. The jury found, under instructions submitting that question, that it was a threat of violence—of hurt—to anyone who picked cotton for a less price than was demanded by the

Southern Tenant Farmers' Union. Whether this threat of harm was calculated to and did intimidate was a question of fact submitted to the jury, of which more will be presently said. In submitting that issue the court charged the jury as follows: "Among the things you will have to determine here, gentlemen, is whether or not the messages written were written for the felonious purpose of intimidating and whether or not they did intimidate or were calculated and intended to intimidate as defined to you in the statutes of the State of Arkansas that I have just read to you."

The jury returned verdicts finding the defendant Henry Johnson guilty in one case only, and the defendant Dan Johnson guilty in the other case only, and their punishment was fixed at one year each, while the defendant Dollie B. Johnson was found guilty in both cases, and she was given a sentence of two years in each case, making her total sentence four years.

It is insisted that the testimony was insufficient to support any of these convictions, and that incompetent testimony was admitted, especially in the case of Dan Johnson.

Dollie B. Johnson is the daughter-in-law of Henry Johnson, but neither Dollie B. nor Henry are related to Dan. There was a preliminary hearing before a justice of the peace in the cases of Henry and Dollie B. Johnson, but none in the case of Dan Johnson. Witnesses at the trial from which this appeal comes gave testimony as to the statements made at the preliminary trial by Henry and Dollie B. Johnson, to the giving of which testimony Dan Johnson objected. The court admonished the jury that this testimony could not be considered by the jury in passing upon the guilt or innocence of Dan. However, it appears that substantially the same testimony was given by Henry and Dollie B. Johnson at the trial in the circuit court; indeed, much of the testimony is undisputed and is to the following effect.

There existed in Mississippi county a labor union known as the Southern Tenant Farmers' Union, which was an affiliate of a nation-wide labor organization com-

monly referred to as the C. I. O. One Mitchell, of Memphis, was an officer of the tenant union. It was known that a letter had been received from Mitchell, and several persons, including appellants, were at the home of Henry Johnson to hear the letter read. There had also been received a package containing printed notices like the one above copied. Dollie B. Johnson admitted that she wrote on three of these notices the words, "Stay out of field if you don't want get in trouble." One of the notices containing this warning was posted on the gate of the Branch farm, another was posted in the Trice Battle farm. Henry Johnson dictated to Dollie B., who had been the secretary of the local organization, the words which Dollie B. wrote on the notices. Henry Johnson admitted that the meeting was held at his home, and that Dan and Dollie B. Johnson were present, and there was testimony to the effect that Dan admitted that he had posted the notice on the Branch farm, and there was testimony to the effect that Henry Johnson took some copies of the notice from the meeting. The notices were posted during the night of this meeting, and posted copies were discovered very early the next morning, one witness said "just as the sun was peeping up."

The testimony abundantly supports the findings that if Dan and Henry Johnson did not actually post the notices, they were instrumental in having this done, and that they acted pursuant to an understanding that this should be done which was agreed upon at the meeting held in Henry Johnson's home, and that the notices were posted during the night-time.

That the notices were intended and calculated to intimidate laborers who were willing to pick cotton for the wages offered is shown by the effect which the discovery of the notices produced upon the laborers. A number of pickers who had been brought in trucks from Memphis refused to enter the fields, and some who had commenced picking left the fields when told of the notices. There was panic among the pickers, and some said they were afraid to enter the fields.

Among other objections to the informations is that they failed to allege the names of the persons who were intended to be and had been intimidated. This objection may be answered by saying (a) that it was not necessary that the persons be specifically named—the notices were addressed to any and all persons who should pick cotton for a wage less than that demanded by the union, and (b) each information did allege the name of a person who had been intimidated. .................. Letson testified that the pickers were afraid to go in the fields, and Albert Fisher, named in the other information, testified that when he heard of the notices he went home and remained there for two days.

Section 1 of the night-riding statute, which appears as § 3499 of Pope's Digest, provides that "If two or more persons shall unite, confederate or band themselves together for the purpose of doing an unlawful act in the night-time, . . . , or to do any felonious act, or if any person shall knowingly meet or act clandestinely with any such band or order, . . . , they shall each be guilty of a felony, and upon conviction shall be punished by imprisonment in the penitentiary for a term not to exceed five years."

Here, the testimony established the fact to the satisfaction of the jury that a meeting was held, which all the appellants attended, when the agreement was reached pursuant to which the notices were posted in the night-time, threatening with hurt persons who were unwilling to join in the strike for higher wages, and this conduct constituted a violation of the law above quoted.

We perceive no reason, however, why other or greater punishment should be imposed upon Dollie B. Johnson than was imposed upon her confederates. It is true she wrote the threatening part of the notices, but she did this at the suggestion and dictation of her associates. The jury was warranted in finding that she knew the notices would be posted in the night-time, and that the matter which she wrote upon the notices would give greater emphasis to them, but so did her associates, who actually posted them or caused them to be posted, and

she was no more guilty than they were. We conclude, therefore, that no greater sentence should be imposed upon her than upon them, and her sentence will, therefore, be reduced to one year to conform to theirs.

The judgments in the cases of Henry Johnson and Dan Johnson are affirmed.