SMITH *v.* STATE.

4149                                           136 S. W. 2d 673

Opinion delivered February 5, 1940.

*Wesley Howard* and *George R. Steel* for appellant.
*Jack Holt, Attorney General* and *Jno. P. Streepey, Asst. Atty. General,* for appellee.

PAGE 900]

HOLT, J. Appellant, Carl Smith, was convicted in the Sevier circuit court of the crime of burglary and of grand larceny and his punishment on the former offense fixed at two years in the penitentiary and on the latter at one year, the sentences to run concurrently.

It is alleged in the information that he broke into a building in Sevier county, Arkansas, being used and owned by the Kansas City Southern Railway Company, a corporation, with the unlawful and felonious intent of committing grand larceny and that he stole therefrom postal savings certificates of the value of $2,500 and other personal property belonging to Joe Wilson and $15.82 in money which belonged to the Kansas City Southern Railway Company, Western Union Telegraph Company and the American Railway Express Company.

The testimony upon which convictions were had, stated in its most favorable light to the state, is to the following effect:

State's witness, Joe Wilson, testified that he was the agent of the railway company, the railway express company, and the Western Union Telegraph Company; that the burglary occurred between 1:10 and 7:05 a. m. on June 30, 1939; that entrance was effected through the negro waiting room, and the safe broken open. The following articles were stolen: One Stone Mountain coin and other personal property consisting of post office savings certificates valuing $2,500, a soldier's adjustment certificate of the value of $750, a Masonic ring of the value of $18, Sears & Roebuck refund check in the sum of $1.50, $5.96 in cash belonging to the Express Company, $8.90 belonging to Western Union, and $4.09 belonging to the Railway Company.

Wilson further testified he saw appellant the morning of the burglary at the station around 7:15 and that he remained around there 45 or 50 minutes; that appellant walked down the platform in front of the depot where some men were working and talked there; that he didn't make any inquiry about any packages of freight or express, and that it was not his custom to hang around the depot; that he did not believe he had ever seen the appellant there at that time of day before; that when

appellant was talking to the men he kept looking at the depot and especially was that true after the sheriff arrived; that after appellant left, the witness followed the Woods boy, who testified as an accomplice, and saw him go to appellant's residence; that appellant was at Knod's store and left there; in 15 minutes, the Woods boy left Knod's store and went up to appellant's house; that he went there between 8 and 9 o'clock the morning of the burglary.

Emmett Woods, an accomplice, testified that he assisted appellant in the burglary in question; that he went down to the depot fifteen or twenty minutes after the train ran north. (The depot agent, Wilson, had testified that he served this train and left the depot at 1:10 a. m.) Woods further testified that appellant had a square tool box about 18 inches long and that he, Woods, stayed outside watching while appellant went inside the depot; that appellant stayed in the depot room about 30 or 40 minutes. Appellant told Woods, after coming out of the depot, that he got some money and other things and would divide with him; that he went to appellant's house the morning after the burglary after daylight and found him in the kitchen about 8:30 washing a pair of trousers; that appellant told him the sheriff was in town and that he did not know any reason for the sheriff being there and was washing his clothes so if anything happened he could skip out.

L. S. Delahunter of the state police heard appellant state that he was home on the morning after the burglary when Emmett Woods came to his house and found him washing trousers.

Boyd Bond on behalf of the state, testified that on Tuesday night before the burglary, which occurred on Friday morning, appellant asked him what he was doing and when he said "nothing" he asked him if he would like to make some easy money and that they could probably do it by getting into the depot; that the witness told appellant that he did not want to get mixed up in anything like that; that appellant said he wanted some money to go see a girl; that appellant told him that he could get into the depot all right; that he would take

one of those outfits a doctor used to examine a person's heart and listen to the turn of the dials and make the safe open; that appellant was an automobile mechanic.

On this state of the record, together with some other testimony of probative value, which, however, we do not deem it necessary to set out, appellant earnestly insists, first, that the evidence is not legally sufficient to sustain his conviction. He urges that the state failed to offer any substantial testimony that would corroborate the testimony of the accomplice, Woods, connecting appellant with the commission of the crimes. We cannot agree.

In a recent case this court has laid down the rule relative to the sufficiency of the evidence to corroborate the testimony of an accomplice. The rule is made clear in that case that the evidence need only tend to connect the defendant with the commission of the crime and it is not required that the evidence be sufficient of itself to convict. In that case (*Shaw* v. *State,* 194 Ark. 272, 108 S. W. 2d 497) this court said:

". . . It is sufficient to say that this was purely a question for the jury. They believed the testimony of Scott, and there is nothing in the evidence to show that it was physically impossible for the witness to have recognized the appellants as he said he did. The testimony of Scott, independent of that of the accomplices, tended to connect the appellants with the commission of the crime, although it might not have been sufficient of itself to convict them. This satisfies the rule. The sufficiency of the corroborating evidence was a question for the jury and, together with the testimony of the accomplices, it is clearly sufficient to support the verdict. *Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995; *Mullin* v. *State,* 193 Ark. 648, 102 S. W. 2d 82."

It is next contended by appellant that his demurrer to the information upon the ground that it was so vague, indefinite, and uncertain that defendant could not plead former jeopardy did not state a public offense under the statute, and did not properly describe the property alleged to have been stolen, its owner or value with sufficient certainty should have been sustained by the court and that error was committed in overruling same.

Appellant's chief complaint in this connection is that the information charges appellant with the taking of $15.82 in money alleging it to be the property of the Kansas City Southern Railway Company, Western Union Telegraph Company, and the American Railway Express Company without alleging whether these companies were corporations or partnerships. Under the announced rule in this state, however, we hold the allegation sufficient to show that the companies are in fact corporations and that the court did not err in overruling appellant's demurrer.

In *Brown* v. *State,* 108 Ark. 336, 157 S. W. 934, this court announced the rule as follows: "In *McCowan* v. *State,* 58 Ark. 17, 22 S. W. 955, the indictment charged that the allegation of ownership was that the articles stolen were the property of 'W. L. C. & Co.,' and we held that this was not a sufficient allegation of ownership, because it showed that the goods stolen were owned by a firm or partnership—a joint ownership, and in such cases it is necessary that the names of the several persons who compose the firm, or who constitute the joint owners, should be stated. But that case is different from this, because here the allegation shows that the property was owned by the railroad company, which is a sufficient allegation of the corporate character of the alleged owner, and shows on its face that it was not the property of a partnership or joint owners." See, also, § 3840 of Pope's Digest.

Finally error is assigned because the court refused to give instruction No. 5 asked by appellant. This instruction dealt with the testimony of the accomplice, Woods. After refusing to give this instruction, the court did give the following instruction on its own motion:

"You are instructed the witness, Emmett Woods, is what is known in the law as an accomplice. You are instructed that one may not be convicted of a felony upon the uncorroborated testimony of an accomplice. You cannot, therefore, convict the defendant upon the testimony of said witness, Emmett Woods, unless you find his testimony is corroborated by other evidence in the

case tending to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows that the crime was committed, and the circumstances thereof. But you are instructed that the amount of such corroborating evidence and its weight is a matter solely for the jury, and if you find that said witness has been corroborated by evidence, positive or circumstantial, other than his own, tending to show that the crime was committed and connecting the defendant with its commission, you will be justified in convicting the defendant, provided you believe him guilty from all the evidence in the case beyond a reasonable doubt."

It is our view that no error was committed by the court in this regard.

We think this instruction meets every requirement set out in § 4017 of Pope's Digest of the Statutes of Arkansas, and that it required the jury to believe appellant guilty from all the evidence in the case beyond a reasonable doubt.

After a careful review of *Bryan* v. *State,* 179 Ark. 216, 15 S. W. 2d 312, relied upon by appellant, we do not think it controls here. The instruction complained of in the instant case is not the same as given in the Bryan case and we think it meets the criticism of the instruction in the Bryan case, by including all the requirements of the statute, *supra,* dealing with the testimony of an accomplice.

It will be observed also that the instruction in the Bryan case, though criticized, was held to be sufficient, and the verdict of the lower court was affirmed.

After a careful review of this entire record, we find no errors, and accordingly we affirm.