Tate *v.* State.

4261                                    163 S. W. 2d 150

Opinion delivered June 8, 1942.

*Ralph Morrow,* for appellant.

*Jack Holt,* Attorney General and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

Holt, J. On an information charging grand larceny, appellant, William Tate, was tried and convicted,

and his punishment assessed at one year in the state penitentiary. For reversal two errors are assigned: (1) that the trial court erred in permitting the prosecuting attorney, over the objections and exceptions of appellant, to amend the information; (2) that the evidence is not sufficient to support the verdict.

1.

The information, among other things, charges that "The said William Tate in the county and state aforesaid, on the 5th day of January, A. D., 1942, unlawfully and feloniously did take, steal and carry away one hundred and twenty-five feet of belting, of the value of fifty dollars, and one blow torch, of the value of five dollars, the property of Bob Stephens (S. E. Thompson & Son) against the peace and dignity of the State of Arkansas."

The record reflects that when the first state witness, Bob Stephens, was introduced, the prosecuting attorney made the following statement to the court: "If the court please, the information charges that this was the property of Bob Stephens. I find that Mr. Bob Stephens was in possession of the property, but the title was not in him, it was in S. E. Thompson & Son, and I ask to amend the information to that extent."

Over appellant's objection, to which proper exceptions were preserved, the state was permitted to amend the information by inserting after the name "Bob Stephens," S. E. Thompson & Son in parentheses. It is our view that no error results from this action of the court for the following reasons:

Section 3840 of Pope's Digest (formerly § 3018 of Crawford & Moses' Digest) provides: "Where an offense involves the commission, or an attempt to commit, an injury to person or property, and is described in other respects with sufficient certainty to identify the act, an erroneous allegation as to the person injured, or attempted to be injured, is not material."

In construing this section of the statute in *Tucker and Peacock* v. *State,* 194 Ark. 528, 108 S. W. 2d 890, this

court had under consideration an information in effect the same as that in the instant case. In the Tucker case, it was alleged in the information, among other things, that the "said Vance Tucker . . . in the county of Drew, and state of Arkansas on or about the 15th day of December, A. D., 1936, did then and there take, steal and carry away twelve hogs, the property of Bailey Jones in Lincoln county and transported same to the home of Vance Tucker in Drew county, contrary, etc., . . ." There this court said:

"There can be no doubt but that the information describes the offense with sufficient certainty to identify the act. . . . The purpose of requiring the owner of the property to be named is for the protection of the defendant. But as our statute provides, where the of-fense is described in other respects with sufficient certainty to identify the act, an erroneous allegation as to the ownership of the property is not material. . . . The offense appears to be described in such a way that there can be no doubt about it. . . . The information is sufficient if it can be understood therefrom that the act charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of the case. Section 3013, Crawford & Moses' Digest.

"Section 3014 of Crawford & Moses' Digest (now § 3836 of Pope's Digest) is as follows: 'No indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merits.'

"Even if it were necessary to name the owner of the property, under § 3018 above quoted, still no substantial rights of the appellant are affected. The owner, however, even when it is necessary to prove ownership, need not have the legal title; but if he had exclusive possession and control of the property, it may be alleged that he is the owner."

Here we think the information describes the offense of grand largeny with sufficient certainty to identify

the act and an erroneous allegation as to the true owner of the property is not material and does not constitute error.

It is also undisputed in the instant case that Bob Stephens as the superintendent of the sawmill in question was in possession and control of the property at the time it was stolen, and, as pointed out in the Tucker case, *supra,* it was not error to allege in the information that he was the owner.

Still another reason why no error was committed is that § 24 of Initiated Act 3, adopted at the General Election November 3, 1936 (now § 3853 of Pope's Digest) permits the amendment of indictments or informations. The only limitation on such amendment is that it relate to "matters of form," and not "change the nature or the degree of the crime charged."

We think it clear that the amendment allowed by the court here did not have the effect of changing the nature of the crime or the degree thereof and that no error was committed in permitting the amendment.

In *Brewer* v. *State,* 195 Ark. 477, 112 S. W. 2d 976, this court in construing the effect of § 3853 of Pope's Digest, said: ". . . So, it will be seen that an indictment may be amended under this section with leave of the court provided it does not change the nature of the crime or the degree thereof. The amendment did not have the effect of changing the nature of the crime or the degree thereof. So the court properly permitted the amendment." See, also, *Johnson* v. *State,* 197 Ark. 1016, 126 S. W. 2d 289.

## 2.

In testing the legal sufficiency of the evidence to support the verdict, it must be viewed in the light most favorable to the state. *Turnage* v. *State,* 182 Ark. 74, 30 S. W. 2d 865; *Clayton* v. *State,* 191 Ark. 1070, 89 S. W. 2d 732; *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50; *Combs* v. *State,* 194 Ark. 1155, 107 S. W. 2d 526; *Smith* v. *State,* 194 Ark. 264, 106 S. W. 2d 1010.

The record reflects that the state relied largely for conviction upon the testimony of Clyde Hale, an accomplice. Before the conviction of appellant, therefore, may be allowed to stand, there must be under our statute, § 4017, Pope's Digest, corroboration of the testimony of Clyde Hale.

In considering the effect of this section of the statute this court in the recent case of *McDougal* v. *State*, 202 Ark. 936, 154 S. W. 2d 810, said: ". . . the rule is . . . well established that the corroborating testimony need only be sufficient to connect the defendant with the commission of the crime and need not be sufficient, standing alone, to convict. The sufficiency of the corroborating evidence is also a question for the jury." See, also, *Smith* v. *State*, 199 Ark. 900, 136 S. W. 2d 673; *Shaw* v. *State*, 194 Ark. 272, 108 S. W. 2d 497; *Middleton* v. *State*, 162 Ark. 530, 258 S. W. 995; *Mullen* v. *State*, 193 Ark. 648, 102 S. W. 2d 82.

Guided by this rule, it is our view that there is sufficient testimony corroborating the accomplice Hale to sustain the verdict.

Clyde Hale testified that he had known William Tate, appellant, for about ten months; that on the night of January 5, 1942, he and appellant went to a sawmill south of Garner, operated by Bob Stephens, and stole the property in question; that they transported the property in a Ford V-8 truck, which belonged to John White, and drove to White's home after the theft and put the stolen property in White's attic; that on the way back from Garner, he and appellant stopped in Beebe and got a cup of coffee and cigarettes at a restaurant; that while in the restaurant, he secured some paper from the restaurant owner with which he defrosted the windshield of the truck by holding the burning paper against the windshield.

R. M. Pennoch testified that on the night of the theft in question two men stopped at his restaurant in Beebe between nine and ten o'clock; they bought some coffee and cigarettes and that one of them got a piece of

paper to defrost his windshield. On being asked to identify appellant at the trial, the witness testified that the man with the accomplice, Clyde Hale, had on an officer's cap and a leather jacket. When appellant was asked to stand up for identification, Pennoch testified: "I didn't pay much attention to the man that was sitting down, I wouldn't like to swear that was the man, but he was dressed similar to that man. . . . He looked a whole lot like him." He further testified that the accomplice lighted the paper with a match and held it up to the windshield.

S. Y. Turnage, deputy sheriff of White county, testified that he examined the footprints at the mill; that there were two sets of tracks, one fitted shoes like those worn by the accomplice and the other tracks were sharp pointed and smaller. He also testified that he procured shoes similar to those worn by the accomplice from the store where the accomplice had recently bought shoes, and that they fitted one set of the tracks, and that the smaller tracks resembled those made by the shoes that appellant was wearing.

Tom Pickard testified that appellant told him that he wanted to talk to the accomplice Hale and that in his presence "he (appellant) told Hale he would be back in the morning and see the prosecuting attorney and clear it up and I asked him if he knew all about it and he said he did, he said he was going to clear it all up." That appellant further said "We were down there, but what we want to get is the fellow that sent us down there." They said "He will be looking out these bars before sundown tomorrow night"; that appellant called the name "White."

Sheriff James A. Neavilles, Jr., testified that he went down to the mill and checked the tracks and that the smaller track had a leather heel and a sharp pointed toe; that when appellant was arrested in Little Rock he had on sharp pointed shoes with leather heels and that he would say the shoes compared identically with the tracks at the mill. There is other evidence that the ground was covered with an inch of snow at the time.

It is our view that this testimony sufficiently corroborates the testimony of the accomplice Hale to connect appellant with the crime charged. Accordingly the judgment is affirmed.

GRIFFIN SMITH, C. J., (concurring). No prejudice resulted from the court's ruling that the information might be amended. If, however, it is the majority's intention to say that substitution of one name for another in *any case* would not be error, I think that holding would be wrong. If it should be alleged that A, of Pulaski county, stole a cow belonging to B, of Sebastian county, when in fact the animal had been purloined from C, of Union county, and the defendant in good faith had prepared to defend the original charge, it would not require the marshalling of logic to convince one that rights had been impaired by permitting a different owner to be named and denying time to meet the new issue.

In quoting from *McDougal* v. *State,* 202 Ark. 936, 154 S. W. 2d 810, the statement is repeated that ". . . sufficiency of the corroborating evidence is also a question for the jury." Credibility of witnesses whose testimony corroborates an accomplice is for the jury, but such evidence must be substantial, and substantiality is a matter of law. *Murphy* v. *Murphy,* 144 Ark. 429, 222 S. W. 721; *Missouri Pacific Transportation Company* v. *Bell,* 197 Ark. 250, 122 S. W. 2d 958.