FORD v. STATE.

4295                                        170 S. W. 2d 671

Opinion delivered April 19, 1943.

*W. S. Atkins* and *Ned Stewart,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl 'N. Williams,* Assistant Attorney General, for appellee.

HOLT, J.  Appellant, Tracey Ford, together with an accomplice, Vestal Maxwell, was charged in an information with the crime of murder in the first degree "while in the commission of the felonious crime of robbery of W. B. Stone." Appellant was tried separately, found guilty and his punishment fixed by the jury at imprisonment for life in the state penitentiary. From the judgment on the verdict comes this appeal.

Appellant says that "the only point upon which he. urges a reversal of this case is that there is not any evidence to corroborate the statement of the admitted accomplice, Vestal Maxwell."

Section 4017, Pope's Digest, provides: "A conviction can not be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." In construing this statutory requirement, this court in *Kent* v. *State,* 64 Ark. 247, 41 S. W. 2d 849, (quoting headnote 3) said: "The statutory requirement that the testimony of an accomplice shall be corroborated is fulfilled if there be any evidence, independent of the testimony of the accomplice, which of itself tends to connect the accused with the offense; its weight being a question for the jury." And in the very recent case of *Casteel* v. *State, ante,* p. 82, 167 S. W. 2d 634, the rule is reiterated in this language:

"The rule in this state is that the corroborating evidence need only tend to connect the defendant with the commission of the offense, and not that such evidence of itself be sufficient, and where there is substantial corroborating evidence tending to connect the defendant with the offense, its sufficiency is a question for the jury, together with that of the accomplice. *Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995; *Mullen* v. *State,* 193 Ark. 648, 102 S. W. 2d 82; *Smith* v. *State,* 199 Ark. 900, 136 S. W. 2d 673; *McDougal* v. *State,* 202 Ark. 936, 154 S. W. 2d 810. See, also, *Powell* v. *State,* 177 Ark. 938, 9 S. W. 2d 583."

The rule is also well established that the testimony of the defendant alone may be sufficient corroboration of an accomplice. In *Dickson and Johnson* v. *State,* 197 Ark. 1161, 127 S. W. 2d 126, we said: "We have but recently held that the testimony of a defendant may in itself be a sufficient corroboration of the evidence of an accomplice. *Morris* v. *State,* 197 Ark. 778, 126 S. W. 2d 93; *Morris* v. *State,* 197 Ark. 695, 123 S. W. 2d 513."

The facts presented, when stated in their most favorable light to the state (appellee), as we must do (*Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50), are in effect as follows: The deceased, Stone, was an old man. He had come from his home in Texas to Texarkana, Arkansas. He met appellant, Ford, and the accomplice, Maxwell, in the Coffee Shop of a hotel in that city at about 10 o'clock on the night of November 1, 1942. They all drank freely of liquor. Appellant learned that Stone had money on his person. Around 3 o'clock a. m. appellant went to his room, 211 in the hotel, to lie down. Shortly thereafter, the deceased, in company with Maxwell, entered appellant's room. After they had been in appellant's room for some time Ford and Maxwell engaged in a fight with the deceased, and here we quote from the testimony of appellant: "Q. And the only beating you administered to W. B. Stone was in an effort to subdue him and prevent him from hurting Maxwell? A. I beat him after I had the knife. I didn't hit him while he had the knife. Q. It has been testified here that you got him down on the bed and pinned his arms down with your

knees and was beating him in the face? A. Yes, sir.
. . . A. I am telling them I hit the man in the mouth with my fist, and that his lips were bleeding. Q. You tell this jury that you administered this severe beating to this drunken man just to take a knife away from him? A. No, sir. It wasn't necessary. Q. Why wasn't it? Because he was drunk, wasn't he? A. He had been drinking.''

Sheriff W. E. Davis testified: ''Q. You were present at the police station on Monday morning when the officer brought Tracey Ford in there? A. Yes. Q. About what time was that? A. Around 6 o'clock in the morning. Q. State whether or not Tracey Ford had blood on him. A. Yes, on his pants and on his shirt. Q. State what Vestal Maxwell said, if anything, in the presence of the defendant, Tracey Ford, in regard to the robbery of the deceased, W. B. Stone. A. He said that they robbed him. He said that Ford had Stone down on the bed with his knees on his arms, beating him in the face, and that he reached back and got Stone's purse out of his pocket and handed it to him, and that he hid $78 under the rug there in the room. He said Ford told him to get $10 and go to the bus station and get a bus ticket so that they could get that man out of town.''

Appellant, Ford, further testified: ''Q. You heard the testimony of Sheriff Davis in which he testified that Vestal Maxwell made the statement in your presence that you took the billfold and money therein off the deceased, Stone; did Maxwell make that statement in your presence? A. Yes, sir. Q. And you didn't say anything? A. No, sir; I didn't because I didn't have to.''

Witness Charlie Chittim testified in regard to finding the money taken from the deceased that he found a pocket book in the room where the fight occurred and that ''the cover on the bed was all rumpled up and the two top quilts were all rumpled up and the billfold was under that''; that there were $2 in the billfold together with a bank book and an identification card with W. B. Stone's name on it; that on information received from Maxwell he found ''$78, or Mr. Johnson found it back

under the rug. There was a place torn in the side of the rug and the $78 was stuffed back under the rug. Q. Did you recover any other money? A. Yes, sir, two ten-dollar bills. Q. Where did you get it? A. Under the scales in front of the Fair Store on East Broad street."

Witness Davis further testified that appellant said that "Maxwell and Stone came up to his room where he was and that Maxwell and Stone got into an argument about some girl, and Stone opened a knife, and Maxwell, I believe he said he started on Maxwell with the knife and that he got hold of Stone or grabbed Stone and threw him on the bed and beat him in the face and bursted his lip. Q. Did he admit or deny the robbery? A. He denied it. Q. Did he state to you whether or not he was in the room after Maxwell left? A. Yes, he said that he was in there after Maxwell left."

Appellant also testified: "Q. Did you tell Sheriff Davis that you were the last man in the room with W. B. Stone? A. I told him I was there when Maxwell left. Q. You were there in the room alone with W. B. Stone when Maxwell left? A. Yes, sir. Q. What time was that? A. I don't know—around 3:30—Oh, I don't know. Q. And what was Stone doing? A. He was sitting on the edge of the bed with a bottle of whiskey in his hand."

When appellant left room 211 the window in the room was down and in about 20 minutes the body of Stone was found beneath this window in the alley, face down, lying on a screen which had been torn from the window of room 211. T. J. Ellison testified that he and I. D. James occupied room 213, adjoining room 211; that he returned to his room between 3:43 and 4 o'clock a. m. on the night of the murder, and we quote from his testimony: "Q. Tell the jury whether or not at that time you heard an unusual noise in the adjoining room. A. We were talking, and all of a sudden there was a noise and an awful crash like something fell out of the window. Q. What did you do? A. We went to the window and looked out and there was the body down there in the alley. Q. Tell what you did. A. I called the clerk at the desk and notified him of what had happened. Q. After

you saw the body in the alley did you hear any noise in the adjoining room? A. Yes, sir. Q. What was it? A. Someone left the room. Q. What room did that noise come from? A. 211.''

Witness James corroborated Ellison and stated that, in addition to the noise in the adjoining room and the crash that followed, he heard ''the window pulled down and someone left the room, after the crash.''

There was other evidence of probative value which we think unnecessary to abstract here. The trial court properly and correctly instructed the jury that ''You are further instructed that it is not necessary in order that the defendant be convicted of murder in the first degree in this case that the evidence should show that he intended to kill W. B. Stone. It is sufficient, if the evidence shows beyond a reasonable doubt, that the deceased, Stone, was killed while in the perpetration or attempted perpetration of robbery and that the defendant, Ford, was present participating in said robbery or attempted robbery. Nor is it necessary in order to convict the defendant of murder in the first degree for the state to prove that Ford himself killed the deceased, Stone; but, if the evidence in the case shows beyond a reasonable doubt that Vestal Maxwell killed the said W. B. Stone while in the perpetration or the attempted perpetration of robbery, and the defendant, Ford, was present participating in said robbery or attempted robbery, then he would be guilty to the same degree and extent as if he, himself, had actually killed the deceased, Stone.''

After a careful review of all the testimony, we are clearly of the opinion that there was ample evidence strongly corroborating the statement of the accomplice, Maxwell, which met the statutory requirement, *supra*. In fact, we think the testimony of appellant, himself, sufficiently corroborated the testimony of Maxwell to warrant appellant's conviction at the hands of the jury. The evidence here presents a case of two young men robbing and brutally killing an old man. Just which one did the actual killing may never be known. The evi-

dence, however, is convincing that both appellant and Maxwell participated in the robbery and the acts that resulted in the death of W. B. Stone. Appellant admitted his fight with Stone in which he administered to Stone a severe beating; that he was left in the room with deceased after the accomplice, Maxwell, had gone, and that Stone's body was found in the alley beneath the window in appellant's room within twenty minutes after Maxwell left; that he had been in company with deceased and Maxwell most of the night; that all had been drinking; that deceased was very drunk; that he knew deceased had money on him; that the window in the room was lowered after the body of deceased had fallen through it. He also admitted that shortly after the discovery of the body he ran when the officers attempted to arrest him.

In *Herren* v. *State,* 169 Ark. 636, 276 S. W. 365, this court said: ''The flight of a person charged with a commission of a crime has some evidentiary value on the question of his probable guilt.'' Citing *Stevens* v. *State,* 143 Ark. 618, 221 S. W. 186.

The physical facts, in addition, point to appellant's guilt. In appellant's bloodstained room $78 were found under the rug, and $20 on Broad street where the accomplice, Maxwell, said it would be found. The screen was off the window of appellant's room and deceased was lying on it in the alley directly beneath, and the window closed. Witnesses in room 213, an adjoining room, heard noises in room 211 just before the body crashed through the window, and someone left the room, after closing the window. Many wounds and bruises were found on the body of deceased which were not caused by the fall.

When all the evidence and circumstances presented in this case are considered, we think the jury was clearly justified in finding appellant guilty as charged in the information, and accordingly the judgment is affirmed.

McFADDIN, J., not participating.