ARKANSAS POWER & LIGHT COMPANY v. HUGHES.

4-3588

Opinion delivered November 19, 1934.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*George W. Emerson, Hargraves & Johnson, Fred A. Isgrig* and *Harry Robinson,* for appellee.

HUMPHREYS, J. Appellee brought suit in the circuit court of St. Francis County against appellant for damages resulting from a fall which was caused by negligently operating a street car which had a worn, slick

steel plate across the platform near the door for passengers to step upon as they entered the car.

Appellant denied that the plate inset in the platform for passengers to step upon as they entered the doorway of the car was worn or slick or that the condition of the plate rendered the entrance of the car unsafe. As an additional affirmative defense, appellant pleaded contributory negligence on the part of appellee in failing to exercise proper care for her own safety and in failing to keep a proper lookout while boarding the car.

The cause was submitted to a jury upon the issues joined, the evidence adduced, and the instructions of the court, which resulted in a verdict and consequent judgment against appellant for $10,000, from which is this appeal.

The first contention for a reversal of the judgment is that the evidence is insufficient to support the verdict.

A statement, in substance, of the evidence in its most favorable light to appellee is as follows:

On April 22, 1932, appellee attempted to board a street car at 5th and Main streets in Little Rock. She got on the step and put one foot on the platform, and, in attempting to lift the other foot to go in, she slipped and fell on her back and would have fallen on the pavement if she had not been caught by her brother-in-law, Mr. Cain, who was behind her. A number of witnesses saw her fall and attributed the cause to the worn and slick condition of the steel plate upon which she stepped with one foot as she attempted to board the car. Her own witnesses were not in perfect accord as to the exact manner in which she fell, but all agreed that she slipped and fell as she was attempting to get on the platform from the step and that the steel plate upon which she was compelled to step was worn and slick.

Appellant contends that, on account of contradictions in the testimony of each of the witnesses and the conflicts between their several testimonies, they are all discredited to such an extent that their testimony should have been disregarded by the court and that he should have peremptorily instructed a verdict for it. In reading the testimony of each witness, we do not find con-

tradictions therein which render the testimony of each wholly and entirely unbelievable, nor do we find such a contradiction between the several witnesses upon material matters that we can say as a matter of law that there is no truth in what any of them said concerning the unsafe condition of the steel plate and that she slipped and fell because of its worn and slick condition. Most of the contradictions relate to the way or manner in which she fell or whether there was a center rod in the doorway or one on each side thereof and as to what was said or done by her immediately after the fall and after she was seated in the car. The jury was the sole judge of the credibility of the witnesses and the weight to be attached to the evidence of each. There was sufficient substantial evidence introduced on behalf of appellee to submit the issues joined to the jury. The court did not err in refusing to instruct a verdict for appellant.

Appellant objected to the court's instruction No. 1 on the alleged specific ground that it made it the insurer of the safety of appellee as she entered the car as a passenger and that on account of this inherently erroneous instruction, the judgment should be reversed. The instruction is as follows:

"The jury is instructed that it is the duty of a common carrier of passengers by street car to exercise such degree of care which may reasonably be expected of intelligent and prudent persons employed in that business, in view of the instrumentalities employed and the danger naturally to be apprehended, to see that every appliance connected with its car is kept in repair and in a safe condition for the protection of passengers."

Our interpretation of the instruction is that it told the jury that it was appellant's duty to exercise that degree of care which may reasonably be expected of intelligent people to see that its car was kept in repair and in a safe condition consistent with the practical operation thereof. This instruction, as thus construed, was more favorable than appellant was entitled to, for the law imposes the highest degree of skill and care upon common carriers, consistent with the practical operation of their cars, to furnish their passengers a safe place to

get on and off. *Prescott & Northwestern Railroad Company* v. *Thomas*, 114 Ark. 56, 167 S. W. 486; *Beech* v. *Eureka Traction Company*, 135 Ark. 542, 203 S. W. 834, and cases therein cited.

The same specific objection was made to instruction No. 4 given by the court, but we find nothing in the instruction which told the jury directly or by reasonable inference that the appellant was the insurer of the safety of appellee as she entered the car.

Appellant also specifically objected to instruction No. 4 because it submitted the issue of assumed risk on the part of appellee to the jury as an abstract proposition of law to be determined by them. No prejudice resulted to appellant on this account, for it was not entitled to the defense of assumed risk. No contractual relation existed between appellant and appellee. This is a suit based on tort and not growing out of contract.

Appellant also specifically objected to the court's instruction No. 6 on the measure of damages because it permitted a recovery for the loss of earnings after the injury and up to the trial of the cause, the diminution of appellee's earning capacity in the future, and for medical, hospital, and doctor bills. It is argued that no evidence was introduced in support of these items of damage. We cannot agree with learned counsel for appellant in this contention. The record contains ample evidence in support of these alleged items of damage.

Lastly, appellant contends that the verdict is excessive. It is true, as argued by learned counsel for appellant, that appellee had little or no earning capacity in dollars. She was a housekeeper and earned her living in that way. She was able before her injury to work and earn small amounts, as she was strong and healthy. On account of her injury, she was incapacitated to do hard work or to work long at a time. She was 47 years of age when injured, and had an expectancy of 23.08 years. She received a very serious and painful injury. Her left sacroiliac was sprained and fractured and a contusion formed in same. Her left knee was sprained and fractured. She was placed in a cast and kept there eight weeks with a weight upon her foot, and a tumor

formed on her back, necessitating a surgical operation. Her suffering was intense and after two years she still suffers much pain. The result is she is crippled so that she is compelled to walk with a cane. Her deformity will remain with her. Dr. Carruthers' bill alone was $250. He testified that she still has a spasm and rigidity of the left knee and in the left sacroiliac region and advises that she have a bone graft at her sacroiliac joint. Her hospital bill was $50 and her medicine bill $15. Considering the loss of her small earning capacity, the extent of her injury, her very intense suffering during the early months after her injury and the suffering she still endures and will likely continue to endure, the amount she has already expended for medical, hospital, and doctor bills, and the operation yet to be had and the probable expense thereof, we think the amount of the recovery was not excessive.

No error appearing, the judgment is affirmed.