MISSOURI PACIFIC TRANSPORTATION COMPANY *v.* ROBINSON.

4-3987

Opinion delivered October 14, 1935.

*W. A. Utley* and *Carmichael & Hendricks*, for appellant.

*Kenneth C. Coffelt* and *Wm. J. Kirby*, for appellee.

MEHAFFY, J. Mrs. Fearney Robinson, on September 4, 1934, took passage on the bus of the appellant at Crow's Station in Saline County, Arkansas, and paid her fare to Benton. The bus stopped at appellant's station for passengers to alight. In attempting to alight appellee alleges that, without any negligence on her part, she caught her shoe on a badly torn and worn upward projecting piece of metal stripping which had been tacked to the floor of said bus at its door, where passengers alight from same, and as a result she alleges she was caused to fall through the door and against the steps and onto and against the concrete curbing and pavement, and that she was painfully and permanently injured thereby. She alleged that appellant failed to furnish safe transportation and failed to provide a safe place to alight, and that the appellant caused and allowed said metal stripping to be and remain on the floor of said bus in a dangerous, torn and worn upward projecting position; that appellant failed to warn appellee of the dangerous condition which it knew, or by the exercise of ordinary care could have known; that on the same day, a short time after her injury, she was in bed in a stupor suffering and under the influence of drugs and medicine, and without any warning or information, and through trickery and deceit, a claim agent of defendant obtained a release from her. She alleged damages in the sum of $3,000.

The appellant answered, denying that it was guilty of any negligence, and denying all the material allegations in appellee's complaint. It also alleged that, if appellee was injured, it was due to her own negligence and carelessness. It alleged that its agent in good faith and without prejudice, paid the full amount that appellee demanded, and that said payment discharged any and all claims for injury.

There was a trial, verdict and judgment in favor of appellee for $2,500. The case is here on appeal.

It is first contended by the appellant that the appellee was guilty of contributory negligence, which bars her recovery; that the proximate cause of her injuries was her own negligence.

The evidence shows that appellee was a passenger, and, when she undertook to alight from the bus, she fell and received the injuries she complains of. There is a conflict in the evidence as to the condition of the metal strip. All of the witnesses, however, admit that the strip was somewhat loose. The evidence on the part of the appellant shows that the bus was inspected daily, and that the inspectors found nothing wrong with the metal strip or any part of the bus where appellee alighted. The evidence shows that there were handholds that passengers might take hold of in alighting or boarding the bus.

We do not deem it necessary to set out the testimony in detail because there is a sharp conflict, and the questions of negligence and contributory negligence were properly submitted to the jury.

It was the duty of appellee, of course, to exercise reasonable care for her own safety, and, if she did not do this and was injured because of her own negligence, she would not be entitled to recover. Whether she was guilty of negligence, and whether appellant was guilty of negligence, were both questions of fact, and the evidence is in conflict, and it was therefore a question for the jury to determine whether she was guilty of negligence and whether the appellant was guilty of negligence. The jury's finding on these questions, if supported by substantial evidence, will not be disturbed by this court.

Appellant calls attention to the case of *Little Rock & Ft. Smith Ry. Co.* v. *Cavenesse,* 48 Ark. 106, 2 S. W. 505. That case merely holds that it is the duty of the carrier to provide a safe and convenient means for entrance to and departure from their trains, and that passengers must exercise ordinary care in taking care of themselves.

In the instant case the court instructed the jury that, if the plaintiff failed to exercise ordinary care to use the

appliances furnished by the carrier, and such failure to use ordinary care caused or contributed to cause the injuries of which the plaintiff complained, then she could not recover. They were also told in another instruction, given at the request of the appellant, that contributory negligence is such negligence or want of care as contributed or helped to cause the injuries complained of, and, if they found the injuries would not have occurred if plaintiff had used ordinary care for her own safety, and they found that she did not exercise such ordinary care, they would find for the defendant. It thus appears that the question of appellant's negligence and of appellee's contributory negligence were submitted to the jury on proper instructions requested by the appellant.

The next case to which attention is called by the appellant is *St. Louis, I. M. & S. Ry. Co.* v. *Forbes,* 63 Ark. 427, 39 S. W. 63. In that case the party injured was not a passenger, but was injured in stepping from the carrier's freight house onto a platform. There were no steps, he had just entered through the door, and stepped out onto the platform, and, as he did so, fell. The court said: "According to his own statement, if it be conceded that the appellant was guilty of negligence in failing to provide steps to the door, he was guilty of contributory negligence and is not entitled to recover."

That is because he had entered the freight house through this door immediately before the injury, and was bound to know there were no steps there, and stepped out with a box in front of him and fell. The court held that he was guilty of contributory negligence because he knew all about the entrance and knew there were no steps there.

Appellant next calls attention to the case of *St. Louis, I. M. & S. Ry. Co.* v. *Greene,* 85 Ark. 117, 107 S. W. 168, 142 L. R. A. (N. S.) 1148. The court said in that case: "Appellee was attended by two friends who could reasonably be expected to assist her with her child if any assistance was needed. There was a smooth cinder platform on a level with the rails and a stool upon which to mount to the first step. The train stopped at the usual

place. Under the circumstances, there was no duty de-volving upon appellant to assist appellee in entering the train." In that case there was no complaint about any defect in the equipment, but the appellee complained only of the conduct of the brakeman in assisting her to get on the train.

The next case referred to by appellant is where the passenger was emerging backward and not looking where she was stepping.

It is next contended by the appellant that it did not owe the appellee the highest degree of care because the bus was standing still. This court said: "Our interpre-tation of the instruction is that it told the jury that it was appellant's duty to exercise that degree of care which may reasonably be expected of intelligent people to see that its car was kept in repair and in a safe condition consistent with the practical operation thereof." The court held that the instruction was more favorable than the appellant was entitled to; that the law imposes the highest degree of skill and care upon common carriers consistent with the practical operation of their cars to furnish their passengers a safe place to get on and off. *Ark. P. & L. Co.* v. *Hughes*, 189 Ark. 1015, 76 S. W. 53; *Prescott & N. W. Rd. Co.* v. *Thomas*, 114 Ark. 56, 167 S. W. 486; *Beach* v. *Eureka Traction Co.*, 135 Ark. 542, 203 S. W. 834.

We do not think there was any error in the instruc-tions on the degree of care, and that the rules applicable to common carriers govern in operating busses carrying passengers. It is true there are many statutes regulating railroads that do not apply to busses and other common carriers, but the law with reference to the duty of com-mon carriers to passengers is the same as to all common carriers.

It is next contended by the appellant that the court erred in permitting the hypothetical question to be asked and answered. We do not think there was any error com-mitted by the court in permitting the hypothetical ques-tion to be asked and answered. The question states with sufficient accuracy and detail the facts which the evidence

tended to show about the injury and condition of appellee. Hypothetical questions must fairly reflect the evidence, but such questions do not necessarily embrace disputed facts that are essential to the issue, and it was said in the case of *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405: "In taking the opinion of experts, either party may assume as proved all facts which the evidence tends to prove. The party desiring opinion evidence from experts may elicit such opinion upon the whole evidence or any part thereof, and it is not necessary that the facts stated as established by the evidence should be uncontroverted. Either party may state the facts which he claims the evidence shows, and the question will not be defective if there be any evidence tending to prove such facts. When a party seeks to take an opinion upon the whole or any selected part of the evidence, it is the duty of the court to so control the form of the hypothetical question that there may be no abuse of his right to take the opinion of the experts."

The rule announced in the Taylor case has been followed since that time.

We do not set out the instructions, but we have carefully considered them, and have reached the conclusion that there was no error in giving or refusing to give instructions.

On the day that appellee was injured, defendant's claim agent went to her home and gave her a check for $65, and she signed a release. The evidence shows that immediately after she was injured the bus driver called Dr. Gann and he gave her chloroform. Appellee says that she did not know what she was signing and would not have settled until she knew something about the extent of her injuries. The evidence shows that she was severely injured and suffering at the time the release was signed, and the check was for only $65.

"A nominal or grossly inadequate consideration for a release will be given serious consideration as affecting the question of fraud in its procurement. When due weight is given to other surrounding conditions, and there is evidence that the consideration is inadequate,

it is a circumstance which, in connection with other circumstances, may be submitted to the jury, and, if grossly inadequate, it alone is sufficient to carry the question of fraud or undue influence to the jury, and where there is inadequacy of consideration, but it is not gross, it may be considered in connection with other evidence on the issue of fraud, but will not, standing alone, justify setting aside a contract or other paper writing on the ground of fraud. And therefore, on the question of fraud *vel non* in inducing an employee to accept benefits from a relief department in release of the master's liability for negligent injuries, his situation, conduct and surroundings at the time, as well as the amount received, may be considered.'' 23 R. C. L. 395.

''There cannot be a release of a cause of action for personal injuries without unequivocal acts showing expressly or by necessary implication an intention to release. Generally, the construction of the release as to the actual intent of the parties presents a question of fact to be determined from the surrounding conditions and circumstances, construed with reference to the amount of consideration paid and the language of the release itself. The amount of consideration paid should have considerable force in determining whether the release was simply paying the releasor for loss of time or some other specific element of damage, or whether it indicated payment of a substantial sum in consideration of which the releasee secured himself against all further developments and the releasor assumed the risk thereof.'' 23 R. C. L. 397; *Chicago, R. I. & P. Ry. Co.* v. *Matthews,* 185 Ark. 724, 49 S. W. (2d) 392.

The evidence is sufficient to support the verdict, and the judgment is affirmed.