McGough *v.* Zurich General Accident & Liability Insurance Company, Ltd.

4-6218 147 S. W. 2d 994

Opinion delivered February 24, 1941.

*Rowell, Rowell & Dickey,* for appellant.

*Owens, Ehrman & McHaney* and *Bridges, Bridges & Young,* for appellee.

Holt, J. December 14, 1939, appellant, Grace McGough, beneficiary under a group accident and health insurance policy issued to her husband by appellee, filed suit to recover under the terms of said policy. She alleged in her complaint that her husband died on March 2, 1939, from the accidental breathing of carbon monoxide gas.

Appellee in its answer denied every material allegation in the complaint.

The only issue involved in the trial of the cause below was whether the deceased, Horace McGough, met his death "from the accidental breathing of carbon monoxide gas" or "from a heart attack or any other disease." The jury determined this issue in favor of appellee, and this appeal followed.

The record reflects that deceased, Horace McGough, left his home about 7:30 p. m., March 1, 1939, and upon returning remained in his automobile, in his garage, where he was found dead at about 7:30 the following morning. At the time his body was discovered, he was sitting in an upright position under the steering wheel with his cap on his head. The doors of the car were open, but the garage doors were closed. The engine of the car was running and the garage was warm and full of fumes and smoke. The temperature was about 40 degrees outside.

The only question presented for review here is whether the trial court erred in permitting the hypothetical question, hereinafter set out, to be propounded by appellee to its witness, Dr. T. J. Raney, Jr.

Appellant's objections to this question are (1) that the facts incorporated in it did not state all of the material facts as substantiated by the proof in the case; (2) that the question invaded the province of the jury; and (3) went beyond the evidence and was, therefore, misleading. It is our view that none of these objections can be sustained.

The question is as follows:

"Q. I will ask you, doctor, in this case there is in evidence that Mr. Horace McGough was a man 52 years old; he had used alcohol over a period of four or five years, and definite testimony on occasions to excess to the extent that he became intoxicated and wouldn't return to his home but slept out; and sometimes to the sufficient extent that he had been arrested; that immediately prior to his death he had a pasty complexion; had become, in the opinion of laymen, somewhat heavy and overweight; one week prior to his death he had reason to believe he

was to be discharged—might be discharged from the railroad, or placed in a position at reduced salary; on the morning of his death he was found in his car sitting in an erect position; his hands folded in his lap; his clothes were not disheveled; his cap was on his head; at that time his complexion observed by the physician who saw him was that his face in its entirety was ash gray in complexion; in addition thereto the garage doors were closed and contained smoke from the exhaust of the automobile itself, but no testimony as to the amount of carbon monoxide; the engine at the time was running; it was hot; with those facts before you, what, in your opinion as a physician, would be the cause of the death of Mr. McGough? A. I would think that the man died of heart trouble—a heart attack I should say, instead of heart trouble.''

At the outset it may be said that this litigation involves a highly technical question and competent expert testimony might aid the jury in arriving at a correct verdict. It was necessary for the jury to determine from all the evidence whether McGough met his death from inhaling carbon monoxide gas or from some natural cause, as heart failure.

The witness, Dr. Raney, offered by appellee as an expert, was a graduate of the Arkansas Medical School, was for three years connected with the Baptist State Hospital in Little Rock, first as intern, then as house doctor, and finally as resident physician. During this time, and since, he has made a study of carbon monoxide poisoning and has come in contact with several cases. On this record certainly we think him qualified as an expert.

The general rule as to what constitutes a proper hypothetical question is stated by this court in the recent case of *Missouri Pacific Transportation Co. v. Robinson,* 191 Ark. 428, 86 S. W. 2d 913, as follows:

''It is next contended by the appellant that the court erred in permitting the hypothetical question to be asked and answered. We do not think there was any error committed by the court in permitting the hypothetical question to be asked and answered. The question states

with sufficient accuracy and detail the facts which the evidence tended to show about the injury and condition of appellee. Hypothetical questions must fairly reflect the evidence, but such questions do not necessarily embrace disputed facts that are essential to the issue, and it was said in the case of *Taylor* v. *McClintock*, 87 Ark. 243, 112 S. W. 405. 'In taking the opinion of experts, either party may assume as proved all facts which the evidence tends to prove. The party desiring opinion evidence from experts may elicit such opinion upon the whole evidence or any part thereof, and it is not necessary that the facts stated as established by the evidence should be uncontroverted. Either party may state the facts which he claims the evidence shows, and the question will not be defective if there be any evidence tending to prove such facts. When a party seeks to take an opinion upon the whole or any selected part of the evidence, it is the duty of the court to so control the form of the hypothetical question that there may be no abuse of his right to take the opinion of the experts.' "

Appellant objects to certain parts of the hypothetical question as being without any competent evidence for their support.

Objection is made to the following: "He had used alcohol over a period of four or five years." We think there is ample evidence in the record to support this statement.

Mrs. McGough testified: "Q. State to the jury, Mrs. McGough, whether you ever had occasion to go in the garage and get your husband? A. I had had occasions to go out and get my husband. My husband wasn't an habitual drinker, but he did drink sometimes, and I have had to go out there and get him several times. . . . Q. When he was drinking would he come in the room where you were? Where did he go? A. Hardly ever, and especially if the family had retired he wouldn't come in. He would stay in the garage and sit in his car. It was very cold and he would be sleepy," and that for, perhaps, a year and a half she had gone to the garage at different times, for her husband, after he had been drinking.

Met Galligher testified that he had arrested Mc-Gough three or four times for intoxication, the last time about thirty days before his death, and the first approximately four years prior thereto.

Objection is next made to the following: ". . . that immediately prior to his death he had a pasty complexion; had become, in the opinion of laymen, somewhat heavy and overweight."

Met L. Galligher, chief of police of Pine Bluff, testified on behalf of appellee, that he saw deceased about thirty days before his death and that he had a pasty complexion and that he weighed between 180 and 200 pounds, and had the general appearance of not being well. This evidence was sufficient to support this part of the question.

Again objection is made to the following: ". . . one week prior to his death he had reason to believe he was to be discharged from the railroad, or placed in a position at reduced salary." We think this part of the question was supported by ample testimony. Mr. Wicker, an assistant superintendent of the railroad, testified that McGough's work had been unsatisfactory since 1937 due to absence from his job and that he had informed Mc-Gough that unless his work improved he would recommend reduction to a lower station, resulting in decreased salary.

Finally objection is made to the statement: ". . . but no testimony as to the amount of carbon monoxide." We fail to find in this record any testimony as to the amount of carbon monoxide gas in the garage at the time deceased's body was found, or at any time after he went into his garage, nor as to the amount of carbon monoxide which could have been inhaled by the deceased. Appellant points us to no evidence on this question. We, therefore, think that this was properly included in the question.

It is our view that the question, taken in its entirety, was a proper one and included no statements that were not supported by evidence and did not fail to include all of the undisputed essential facts.

Finding no error, the judgment is affirmed.