CAPITOL TRANSIT COMPANY *v.* BURRIS.

5-601                    276 S. W. 2d 56

Opinion delivered March 7, 1955.

*Bailey, Warren & Bullion,* for appellant.

*Martin, Dodds & Kidd,* for appellee.

ROBINSON, J. This is an appeal by a transportation company from a judgment for damages due to personal injuries sustained by a seven-year-old girl when struck by an automobile while attempting to cross the street in front of the bus from which she had alighted at a place other than the regular stopping place for the bus, and where there was no sidewalk but a steep embankment.

Billie Farrell Burris, a girl seven years of age, lives with her mother, Mavis Burris, on West 12th Street in Little Rock in the western part of the city. She attends the Peabody School located in downtown Little Rock. On the 9th day of September, 1953, about 4:00 P.M., she was riding one of defendant Capitol Transit Company's buses from school to the vicinity of her home. The bus is an electric trolley. On this particular day the bus was crowded with school children; there were some 70 persons on a bus having a seating capacity of 42. Some of the boys at the rear of the bus were annoying the operator by continually ringing the bell as a signal to stop at the next corner. Madison at 11th Street is a regular bus stop; it is a transfer point. When the bus reached that intersection, the driver did not stop although he had received a signal to do so, and it appears that since it was a transfer point he ordinarily would have stopped without a signal; however, he momentarily forgot about it being a transfer point and did not stop on the signal on account of the conduct of the boys in needlessly ringing the bell. When he got across Madison Street, however, he suddenly remembered that it

was a transfer point, and pulled over to the curb and stopped 63 feet west of the west curb line of Madison Street. The front of the bus was in close to the curb, but the rear of the bus was about three feet from the curb. The bus driver opened the front and back doors and the little girl, Billie Farrell Burris, got off of the bus at the front, went in front of the bus and attempted to cross the street.

Dr. Oscar C. Jaffee had been following the bus for several blocks wanting to pass, but the opportunity had not occurred; when the bus failed to stop at the regular stopping place at Madison and crossed Madison Street, Dr. Jaffee thought the bus would not be stopped at that point and then attempted to pass. In doing so he struck the little girl, Billie Farrell Burris, causing serious and painful injuries consisting of bruises, cuts, lacerations, and a broken leg. She was in a cast for approximately seven weeks and suffered severe pain.

The little girl's mother, Mavis Burris, filed this suit in her own behalf and as next friend against the Capitol Transit Company and Dr. Jaffee. The cause was tried before a jury resulting in a judgment in favor of Dr. Jaffee and a judgment against the transportation company for the use and benefit of the little girl in the sum of $2,500, and $511 for the mother.

On appeal the transportation company first contends that even if there was negligence on the part of the bus driver, there was intervening negligence on the part of the little girl which caused the injuries; and by reason of such intervening cause the bus company is not liable. In support of this point appellant cites *West* v. *Wall*, 191 Ark. 856, 88 S. W. 2d 63. There the owner of a truck, knowing it had defective brakes, had furnished it to another driver. It was held that the driver of the truck knew of the condition of the brakes, and his negligence in driving the truck in its defective condition was the proximate cause of the collision; but the act of the owner in furnishing the truck with defective brakes was remote. Also cited is *Arkansas-Louisiana Gas Co.* v.

*Tuggle,* 201 Ark. 416, 146 S. W. 2d 154. There it was held that the negligence of one of the parties was remote and not the proximate cause of the injuries. Appellant also cites cases from other jurisdictions to the effect that when a bus driver lets a passenger off at a safe place, he owes no further duty to the passenger. Also in some of the cases there is an element of contributory negligence. In none of the cases cited was a seven-year-old child involved.

Furthermore there is a question here of whether the child was let off at a safe place; at the point where the bus stopped there is no sidewalk, and in addition there is a high terrace arising sharply from the curb to a height of five or six feet; rocks were scattered along this embankment and it is not a suitable place to walk. The jury could have found that a prudent bus driver ought to have anticipated that one let off the bus on the side of this embankment who wanted to cross 11th Street to the south would do so at that point, and would not attempt to walk on the side of the embankment back to the corner before crossing the street.

Appellant cites *Gage* v. *Harvey,* 66 Ark. 68, 48 S. W. 898, 43 L. R. A. 143, 74 Am. St. Rep. 70. There the court said: ''In determining whether an act of a defendant is the proximate cause of an injury, the rule is that the injury must be the natural and probable consequence of the act—such a consequence, under the surrounding circumstances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act; the act must, in a natural and continuous sequence, unbroken by any new cause, operate as an efficient cause of the injury.'' When the rule as announced in the *Gage* case is applied here, it becomes a question for the jury to determine under the surrounding circumstances whether the bus driver should have foreseen the very thing that did happen. Appellant further says: ''If the driver could have foreseen the effect of the intervening force and the ensuing injury, then his negligence would have been an official and legal cause of the injury.'' Whether the bus driver could have foreseen the thing

that did happen was a question for the jury. Appellant further claims that the little girl was not injured while alighting from the bus, but was injured while crossing the street; that the alleged negligence of the carrier in discharging her west of the regular bus stop had no causal connection with the injuries sustained; however, it is shown that Dr. Jaffee would not have attempted to pass the bus at a regular bus stop; it was only due to the bus stopping unexpectedly at an unusual place that Dr. Jaffee attempted to pass it.

In this case the bus driver did not stop at the regular bus stop but crossed Madison Street and stopped at an unusual place. It was his duty to stop the bus at a safe place. *Arkansas Power & Light Co.* v. *Hughes,* 189 Ark. 1015, 76 S. W. 2d 53. Whether he did so stop the bus at a safe place in the circumstances shown to exist here was a jury question. He could see a car approaching from the rear in the mirror located on the side of the bus; the little girl was only seven years of age; it was her second day at school that year. In 145 A. L. R. 1208 in an annotation on liability of a motor bus carrier for death or injury to discharged passengers struck by a vehicle not within its control, the annotator says: "Perhaps the most frequent single consideration taken into account by the courts in determining whether the place where a motor carrier has discharged a passenger is safe or not is the age of such passenger. This is especially true where, as in the case of transportation of school children, the operator knows that the passenger must cross the highway after leaving the bus to get to his destination. It is generally held that the care to be exercised must be proportioned to the degree of danger inherent in the child's youth and inexperience."

In *Taylor* v. *Patterson,* 272 Ky. 415, 114 S. W. 2d 488, a child was injured in attempting to cross the street after being discharged from a taxicab on the side of the street opposite his home. There the court said: "If [the passenger] at the time had been an adult of mature years and in possession of the faculties of a normal adult,

the court would have no trouble in reaching a conclusion quickly as to the liability of the defendant taxicab driver; but we have here a child passenger to deal with, under seven years of age, just returning from school full of life, with great anxiety no doubt, as is usual in a child of that age, to reach his home and mother quickly . . . and possessing at that age but little discretion or judgment or ability to perceive surroundings or situations that would produce injury or death should he undertake to cross the street. This condition of the child passenger was known to Taylor as was also the heavily traveled street, and the danger in crossing same to reach the home of the decedent was necessarily obvious and plain to see by appellant. Such a state of facts as that differentiates this case from the situation of an adult passenger.''

Ordinance No. 2064 of the City of Little Rock provides that all companies operating street cars in this city shall be required to stop their cars for the purpose of discharging and taking on passengers at the near side of any intersecting street before crossing such street. At the request of the plaintiff, an instruction was given to the jury based on this ordinance. Appellant contends this instruction was error for the reason that the ordinance applies only to street cars and not to electric trolleys, and cites *Morley, Comm.*, v. *Capitol Transit Co.*, 217 Ark. 583, 232 S. W. 2d 641, and *Amalgamated Association of Street and Electric R. & M. C. E.* v. *Morley, Comm.*, 219 Ark. 53, 239 S. W. 2d 745. These cases deal with chauffeurs' licenses and the taxing of motor buses; neither is in point with the question presented here. In our opinion the ordinance in question is applicable to an electric trolley as well as a street car. It is obvious that the ordinance is intended as a safety measure in addition to fixing a regular place for the buses to stop for the convenience of passengers. Both reasons apply to an electric trolley as well as to a street car.

Affirmed.