554

YELLOW CAB COMPANY ET AL *v.* BETTY DOSSETT

5-4491                                                    426 S. W. 2d 792

Opinion delivered April 8, 1968
[Rehearing denied May 13, 1968.]

*Rose, Meek, House, Barron, Nash & Williamson,* for appellants.

*McMath, Leatherman, Woods & Youngdahl,* for appellee.

Lyle Brown, Justice. Plaintiff-appellee was injured when she alighted from appellant Yellow Cab's vehicle and was struck by an oncoming car. From a judgment against it, Yellow Cab appeals. The North Little Rock Transportation Co., Inc., joins in the appeal because of the possibility that it might, in a subsequent proceeding, be held liable. Appellants insist there was no substantial evidence of causative negligence on the part of any cab driver; that the court erred in its instructions; that liability insurance was injected into the trial; and that appellants' motion for a trial on the grounds of newly discovered evidence should have been granted.

Betty Dossett, twenty-two years of age and a working girl, lived a short distance from the apartment of her friend, Bonnie Pockrus, a telephone operator. Both were unmarried. On the night of the accident in December, the girls had planned to meet at Bonnie's apartment at 111 West Thirteenth Street in Little Rock. Bonnie's workday ended at around 9:00 p.m., and the television show which they were to watch started at 10:15 p.m. Here is a summary of the pertinent incidents as related by appellee:

She lived only four and a half blocks from Bon-

nie's apartment but because of the lateness of the hour and a misting rain she called Yellow Cab; when she entered the cab she gave the driver the address of her destination; when the driver arrived at 111 West Thirteenth he stopped the cab in front of the address but on the opposite side of the street; (the cab entered West Thirteenth headed west and his right side of the street was opposite the apartment); as they turned into Thirteenth Street she handed him a one dollar bill; he was due to give her twenty-five cents in change and she reminded him of it; when he stopped the cab, Betty pointed to the apartment and said, "I want out at the house across the street over there in the U shape . . ."; he was mad about the change and "he just sat there"; she finally concluded that he was not going to move until she alighted; cars were parked on the side of the street where the cab stopped; the cab was in the left half of his driving lane next to the white center line; she got out of the cab in a misting rain and bareheaded; she walked out from behind the Yellow Cab and was struck by an automobile operated by one Gary Elder, who was headed in the opposite direction; her vision of Elder's car was somewhat obstructed by the Yellow Cab and an advertising sign on the back of it. (Elder was joined as a defendant and the jury returned a verdict in his favor.)

Appellants' Point I: *There was no substantial evidence of negligence on the part of any cab company which was a proximate cause of plaintiff's injury.* Appellants' argument is devoted to the theory that the cab driver's responsibility had ended because Miss Dossett had alighted at a safe place, thereby assuming the status of a pedestrian.

Whether a particular point is a safe place for a passenger to alight is a relative matter which must be viewed in light of the particular circumstances. It is generally a jury question. *Capitol Transit Co.* v. *Burris,* 224 Ark. 755, 276 S. W. 2d 56 (1955). Plaintiff's evidence

must have convinced the jury that the cab driver discharged Miss Dossett at a place which was likely to subject her to risk of injury and coerced her into alighting at that point. In addition to our previous summary of Miss Dossett's testimony there was this evidence: The driver could easily have taken a route which would have placed him on the proper side of the street when the destination was reached; there was a vacant space next to the curb and immediately in front of the apartment; the driver could have turned into an alley which ran alongside the apartment and discharged Miss Dossett on the sidewalk; and the driver witnessed the striking of Miss Dossett and drove away, evidencing complete disregard for her welfare. Appellee testified that she took the cab such a short distance because she did not want to be out on the streets at night.

The cab driver had an unescorted girl as a passenger; the hour was late; she engaged a cab for a relatively short distance to take her to a specific address; there was evidence of misting rain; trees and shrubs are abundant in the apartment block; several old buildings are evident; at one end of the block is a liquor store; and no street lights are shown in the center of the block, the situs of the apartment. Under those circumstances, and in view of her expressions of concern to the cab driver, it should have been evident that the girl might attempt the shortest route rather than walk a half block to one of the corners, cross the street, and walk another half block to her destination.

The cab driver owed the highest degree of care, consistent with practical operation, to afford appellee a safe place to alight. *Arkansas Power & Light Co.* v. *Hughes,* 189 Ark. 1015, 76 S. W. 2d 53 (1934); *Checker Cab & Baggage Co.* v. *Harrison,* 191 Ark. 564, 87 S. W. 2d 32 (1935). In the face of that duty it is not unreasonable to say that he created a situation which stimulated appellee to attempt to cross the street. If that be true, then the initial proximate causation continues. *Hill* v. *Wil-*

*son,* 216 Ark. 179, 224 S. W. 2d 797 (1949); 2 *Restatement of Torts* 2d § 443. Any negligence on her part would, under our comparative negligence law (and under which this case was submitted), diminish or bar her recovery, depending on her degree of negligence. See *Restatement, supra,* § 443 c.

Appellants' Point II. *The Instructions of the Court were erroneous.* Yellow Cab offered this modification of AMI 1701:

> "At the time of the occurrence in question, Yellow Cab Company was a common carrier. A common carrier is not an insurer of the passenger's safety, but it has a duty to its passengers to use the highest degree of care consistent with the type of conveyance used and the practical operation of its business. *While this duty on the part of a carrier requires it to furnish to its passengers a safe place to alight, no further duty is owed by the carrier after a passenger has alighted at a safe place or after a reasonable time and opportunity to reach a position of safety. Thereafter, the passenger assumes the status of a pedestrian, and is subject to all of the duties and obligations imposed upon pedestrians."* (Emphasis added.)

AMI 1701 was given but without the modification shown in italics. The refusal to give the instruction as modified was not error. The modified instruction contained the same error as the cab company's proffered instruction in *Checker Cab & Baggage Co.* v. *Harrison, supra.* Checker Cab's proffered instruction 11 (which was refused) would have told the jury that if Checker "transported the plaintiff with safety to the gate in front of his home and discharged him upon the highway in safety, its duty to him was performed, and thenceforth the plaintiff, Harrison, was a mere traveler upon the highway. . ."

The amended portion of AMI 1701, in essence, would tell the jury the same thing as quoted from *Checker Cab.* Of the proffered instruction 11 this court said:

"It will be noted that appellant's request number 11 absolved it from all liability when the passengers were discharged from the cab, irrespective of the place of discharge or the conditions surrounding it. We do not understand this to be the law."

The safety requirements surrounding the discharge of a cab passenger in a public street are to be found in *Checker Cab.* Exercising the highest degree of care consistent with practical operation, the driver should not discharge the passenger at a point where reasonable foresight would dictate the passenger might be injured. All circumstances at the moment which would be evaluated by a competent driver should be considered. The phrase in the amended instruction, "no further duty is owed by the carrier after a passenger has alighted at a safe place," certainly does not embody the recited requirements.

Within the format of AMI 601 the trial court inserted a city ordinance which requires cab drivers, when possible, to discharge passengers at the sidewalk or at the extreme right side of the street. The jury was told that a violation of the recited ordinance would not necessarily be negligence, only evidence of negligence. Contrary to appellants' contention, we perceive no error in giving that instruction. Whether it was possible to discharge Miss Dossett near the sidewalk crossing the alley, or in a vacant place near the curb on the apartment side of the street, and whether the driver's failure to so act constituted a proximate cause, were questions for the jury.

Appellants' Point III. *The Court erred in refusing to grant a mistrial when counsel for Gary Elder delib-*

*erately injected the existence of liability insurance for
the taxicab as an issue in the case although he knew that
no such liability insurance existed.* Mr. Fred Andres,
president of Yellow Cab Company, testified. The main
purpose of his testimony was to establish Yellow Cab's
contention that none of its vehicles was transporting
Miss Dossett on the night of the accident. Counsel for
co-defendant Gary Elder cross-examined Andres. In
that examination counsel produced a deposition given by
Andres. There Andres had stated that on the morning
after the accident he received knowledge of the incident
from the night manager's report. Shortly thereafter he
sent a report to the insurance company. Counsel for Yel-
low Cab moved for a mistrial because of the reference
to insurance. The motion was overruled and Gary El-
der's counsel continued to read from the deposition
which contained additional reference to correspondence
with a liability carrier. The court admonished the jury
that the only purposes for which those references could
be considered would be in relation to credibility of the
witness and the identity of the cab involved in the acci-
dent.

We find no error. Insurance was not injected into
the case by appellee. It was mentioned by co-defendant's
counsel and in good faith in an effort to show that the
identity of the driver and of the particular cab involved
was known to Yellow Cab the day after the accident. On
direct examination, Andres indicated the contrary to be
true. We cannot say the court abused its discretion. A
latter portion of the deposition, in which Andres assert-
ed the non-existence of liability insurance, was not read
by Elder's counsel. Counsel for Yellow Cab asserts that
failure as error. Yellow Cab's counsel did not offer to
read that portion of the deposition. He asked the court to
instruct the jury as to the absence of liability insurance,
and the court properly refused.

Appellants' Point IV: *The court erred in denying
appellants' motion for new trial based on newly discov-*

*ered evidence.* In a matter of days after the trial, Yellow Cab and North Little Rock Transportation Co. (the latter operated Dixie cabs) moved for a new trial. The reason here pertinent was as follows:

"The movants have discovered new evidence which they could not, with reasonable diligence, have discovered and produced at the trial. Subsequent to the trial, one Dewey Worthey, a taxicab driver, reported that he had read the newspaper report of the jury verdict and that he remembered the incident and that the taxicab out of which Miss Dossett alighted had been driven by one Richard John Laske who was driving Dixie cab No. 24 . . ."

Most of the essential rules for the consideration of a motion for new trial are succinctly stated in *Halbrook* v. *Halbrook,* 232 Ark. 850, 341 S. W. 2d 29 (1960). Summarizing, the trial court has broad discretion; these motions are not favored by the courts; the court should be convinced that injustice has been done; the new evidence is not cumulative; the proof was not discoverable through due diligence; and the additional testimony would probably change the result.

We have carefully weighed the evidence on Point IV in light of *Halbrook* and conclude the trial court's ruling should not be disturbed. We are particularly persuaded by the testimony of Mr. Andres, president of both companies, and his own employees. Andres conceded that on the morning after the accident he knew the identity of the driver; Dewey Worthey, a cab driver employed by Andres, testified he learned the driver's identity, having talked with the driver on the night following the accident; and that the incident was discussed by the driver at a cafe table in the presence of some five cab drivers, all employed by Andres. A radio dispatcher testified the driver of Betty Dossett's cab called in when the accident happened and asked for instructions. The dispatcher said he reported to the night manager, who

made up a report on the accident. That report was made available to Andres, who in turn made a report to an insurance carrier.

Suit was filed July 6, 1965. From that time until the date of the trial, appellants had twenty months in which to ferret out the "missing" evidence. It is not unreasonable to conclude that due diligence would have revealed the evidence in ample time for the trial.

Affirmed.